901 A.2d 1017

**In re ADOPTION OF S.E.G.**

**Appeal of L.S.G.**

Supreme Court of Pennsylvania.

Argued March 2, 2006.

Decided July 18, 2006.

John Edgar Perrott, Esq., for L.S.G.

Anthony S. Dedola, Esq., Uniontown, for Fayette County Children and Youth Services.

Jason Frederick Adams, Esq., Uniontown, for S.E.G.

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER, BALDWIN, JJ.

## OPINION

Justice BAER.

We granted allowance of appeal in this case to review the Superior Court's determination that a state agency may file a petition to terminate parental rights prior to the issuance of a court order changing the goal of a child's permanency plan from reunification to adoption. We conclude that a court-

ordered goal change is not a condition precedent to the filing of a petition to terminate parental rights, and accordingly, affirm the order of the Superior Court.

 Initially, we emphasize that our limited grant of review in this case does not encompass an evaluation of the sufficiency of the evidence for termination, but rather involves a pure question of law—whether the Juvenile Act's provisions relating to permanency review for dependent children, 42 Pa.C.S. § 6351, or the Adoption Act's provisions for termination of parental rights, 23 Pa.C.S. §§ 2511–21, prohibit the filing of a petition for involuntary termination of parental rights in Orphan's Court prior to a Juvenile Court's order changing a dependent child's permanency goal to adoption.[1,2] Essentially, the question presented requires this Court to determine whether Pennsylvania's statutes relating to dependent children allow for "concurrent planning."

An understanding of the historical underpinnings and current status of the concept known as concurrent planning is a necessary prerequisite to a discussion of this case. As its name implies, concurrent planning is a dual-track system under which child welfare agencies provide services to parents to enable their reunification with their children, while also planning for alternative permanent placement should reunification fail. *See* Richard Barth, Fred Wulczyn, & Tom Crea, *From Anticipation to Evidence: Research on the Adoption and Safe Families Act*, 12 VA. J. SOC. POL'Y & LAW 371 (2005). The system developed in reaction to the substantial problems that arose under the prior system, which focused almost exclusively on reunifying families. *See id.* at 371–75; *see also*

---

1. Our standard of review of a pure question of law is *de novo*, and our scope of review is plenary. *See Safe Harbor Water Power Corp. v. Fajt*, 583 Pa. 234, 876 A.2d 954, 966 n. 12 (2005).

2. We note that notwithstanding that dependency is heard in Juvenile Court and termination in Orphans' Court, the Legislature has authorized Juvenile Court judges to sit as Orphans' Court judges to permit a Juvenile Court judge to hear termination proceedings in a case such as this. 42 Pa.C.S. 6351(i). Thus, in practice, often one judge hears both dependency and termination proceedings. In this case, however, that did not occur.

*In re Lilley*, 719 A.2d 327, 332–35 (Pa.Super.1998). In many cases, children languished in foster care for years while their parents attempted unsuccessfully to regain custody by demonstrating the ability to care for their children. *See id.* Conversely, but equally unfortunately, some children were returned prematurely to unsafe environments in failed attempts at reunification, necessitating their re-removal and return to foster care. *See id.* Even in cases where the parents clearly would not be able to regain custody, agencies and courts were unable to sever the parental rights in an expedited process and allow the pursuit of permanent, stable homes for children. *See id.* As a consequence of all these scenarios, children suffered what became known as "foster care drift: the repeated transitions from foster care to foster home that occur when children stay on foster care for a lengthy period without a permanent plan." *Id.* at 373.

In reaction to the situation, the United States Congress enacted the Adoption and Safe Families Act of 1997, Pub.L. 105–89 (ASFA). ASFA altered the focus of dependency proceedings to include consideration of the need to move children toward adoption in a timely manner when reunification proved unworkable. *See* 42 U.S.C. § 671(a)(15)(C). In doing so, ASFA tied federal funding to a State's adoption of a plan that encompassed the required elements set forth in ASFA. *See id.* § 671(a). One of the requirements relevant to the current appeal involved the availability of concurrent planning: "In order for a State to be eligible for payments . . . it shall have a plan approved by the Secretary which . . . provides that reasonable efforts to place a child for adoption or with a legal guardian *may be made concurrently* with reasonable efforts of the type described in subparagraph (B)[to preserve and reunify families.]" *See id.* § 671(a)(15)(F) (emphasis added).

In the years following the federal enactment of ASFA, Pennsylvania modified its statutes relating to dependent children to comport with the federal provisions. Significantly, Pennsylvania's legislature amended the Juvenile Act in 1998 to include the dual purposes of reunification and adoption rather than merely reunification: "This chapter shall be interpreted

and construed to effectuate the following purposes: (1) To preserve the unity of the family whenever possible *or to provide another alternative permanent family when the unity of the family cannot be maintained....* " 42 Pa.C.S. § 6301(b)(1) (emphasis added to indicate amended language). The question now before the Court is whether the specific, language of the applicable statutes provides agencies and trial courts the ability to pursue the dual purposes of reunification and alternate permanency planning through concurrent planning, as required by ASFA, by allowing the agency to pursue termination without first securing a court-ordered goal change.

In the case at bar, L.S.G. (Mother) voluntarily placed her three-month-old son, S.E.G. (Child), in the custody of the Fayette County Children and Youth Services (CYS) in August 2002.[3] Within one month, the Juvenile Court Division of the Fayette County Court of Common Pleas adjudicated Child dependent and ordered the continuation of his placement in CYS's custody. With reunification as the permanency plan goal, CYS developed a family service plan outlining issues to be addressed by Mother prior to reunification with Child. At a permanency review hearing on July 24, 2003, CYS indicated that it intended to file a termination petition in the near future, but recommended reunification remain the goal until the conclusion of the termination proceedings. Accordingly, the Juvenile Court ordered the continuation of reunification as the goal.

In September 2003, CYS filed its petition to terminate Mother's parental rights pursuant to Section 2511(a)(8) of the Adoption Act.[4] The Orphans' Court Division of the Fayette

3. Because the Court is not reviewing the sufficiency of the evidence to support termination, we need not consider the factual history of the case. Rather, we limit our discussion of the facts to the relevant timeline.

4. As pertinent to this appeal, Section 2511 provides:

 § 2511. Grounds for involuntary termination

County Court of Common Pleas held hearings on the petition on April 8 and 21, 2004. At the hearing, Mother submitted a written motion to dismiss the petition, asserting that the termination petition pursuant to the Adoption Act, 23 Pa.C.S. §§ 2511–21, could not be filed in Orphans' Court until the Juvenile Court, acting pursuant to the Juvenile Act, 42 Pa.C.S. §§ 6301–65, had changed the permanency goal from reunification to adoption. Essentially, Mother contended that a Juvenile Court permanency review hearing provided the only opportunity to challenge the adequacy of the services provided by CYS to Mother, and that without the goal change hearing, she would be denied due process.[5] To support her argument,

> (a) General rule. The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> \* \* \* \*
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> 23 Pa.C.S. § 2511.

5. Although Mother did not specifically cite 42 Pa.C.S § 6351 in her motion, her argument in the hearing and before this Court invokes the structure of the section. Subsections (a)-(d) of Section 6351 do not apply to this case because they address issues prior to the dependent child's removal from the parents' custody or issues relating to dependency and delinquency programs. Subsection (e) sets forth timetables for permanency review hearings "for the purpose of determining or reviewing the permanency plan of the child, the date by which the goal of permanency for the child might be achieved and whether placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child." 42 Pa.C.S. § 6351(e). The parties' arguments currently before the Court relate primarily to the following provisions of subsections (f) and (f.1):

> (f) Matters to be determined at permanency hearing.—At each permanency hearing, a court shall determine all of the following:
> (1) The continuing necessity for and appropriateness of the placement.
> (2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.
> (3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

Mother relied upon a number of Superior Court cases establishing the significance of a Juvenile Court's decision to change the permanency goal. The cases, as discussed in detail *infra*, hold that the change of goal to adoption definitely and finally determines that the services provided by CYS were adequate and that CYS need not continue to provide services to the parent. Significantly, the Superior Court has held that an Orphans' Court considering a termination petition cannot reconsider a decision to change a goal to adoption, and that a parent who fails to appeal a goal change has waived the ability to challenge the determination. *See In re A.L.D., Jr.,* 797 A.2d 326, 339–40 (Pa.Super.2002).

> (4) The appropriateness and feasibility of the current placement goal for the child.
>
> \* \* \* \*
>
> (9) If the child has been in placement for at least 15 of the last 22 months ..., whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:
> (i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;
> (ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or
> (iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.
>
> \* \* \* \*
>
> (f.1) Additional determination.—Based upon the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following:
> (1) If and when the child will be returned to the child's parent, guardian or custodian in cases where the return of the child is best suited to the safety, protection and physical, mental and moral welfare of the child.
> (2) and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.
> (3) If and when the child will be placed with a legal custodian....
> (4) If and when the child will be placed with a fit and willing relative....
> > (5) If and when the child will be placed in another living arrangement intended to be permanent in nature which is approved by the court....
>
> 42 Pa.C.S. § 6351.

Rejecting Mother's argument, the Orphans' Court denied the motion to dismiss in July 2004. On August 11, 2004, the court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(8).[6] After Mother filed her notice of appeal and her timely statement of matters complained of on appeal, the Orphans' Court filed an opinion addressing Mother's challenge to the sufficiency of the evidence and her claim that a goal change to adoption must precede CYS's termination petition.[7] Relevant to the issues in this case, the court found that CYS had supplied Mother with the appropriate services and had met its burden to prove that Mother's parental rights should be terminated. Similarly, the Orphans' Court held that termination would be in Child's best interest as it would allow for his adoption.

In answer to Mother's challenge to the timing of the termination petition, the Orphans' Court concluded that it was bound by *In re M.G. & J.G.*, 855 A.2d 68, 70 (Pa.Super.2004), in which the Superior Court held that a "goal change is not a necessary prerequisite to the initiation of involuntary termination proceedings." In so holding, the Orphans' Court noted that by not changing the goal to adoption, CYS could continue its concurrent plan providing Mother with services aimed at reunification, such as visitation and parenting classes, until the time of termination, whereas if the goal had been changed to adoption those services would have ceased. Consequently, the court noted that this process of concurrent planning enables a parent to receive agency assistance in his or her quest for reunification until the point of termination.

Before the Superior Court, Mother challenged the court's decision in *M.G.*, upon which the trial court based its decision. She claimed that the decision in *M.G.* failed to consider the interaction of two subsections of Section 6351 and resulted in the violation of the parents' due process rights. In a memorandum decision, the Superior Court affirmed the termination

**6.** The court also terminated the parental rights of Child's father, who is not a party to this appeal.

**7.** As previously noted, the sufficiency of the evidence is not before this Court.

of Mother's parental rights. It relied upon its prior reasoning in *M.G.*, observing that only an *en banc* panel of the Superior Court or this Court could overturn that decision. Consequently, Mother directed her challenge to this Court, and we granted allowance of appeal limited to the following issue:

Whether the language of 42 Pa.C.S. § 6351, governing the disposition of dependent children, requires that a child protective agency change its goal for a dependent child to adoption prior to seeking termination of parental rights.

*In re Adoption of S.E.G.*, 584 Pa. 536, 885 A.2d 982 (2005).

Any review of this issue, must begin with the Superior Court's decision in *M.G.* As in the case at bar, the child service agency in *M.G.* filed a petition for termination of parental rights without seeking a goal change from reunification to adoption but after the children had been in foster care for over fifteen months, the triggering timeframe for a court to scrutinize the timeliness of an agency's permanency plan and direct the filing of a termination petition, absent specific statutorily recognized exceptions, pursuant to 42 Pa.C.S. § 6351(f)(9). The parent in *M.G.*, like Mother before this Court, claimed that the termination petition was premature while the permanency goal continued to be reunification.

The Superior Court initially recounted the development of the Lycoming County procedure of filing a termination petition prior to a goal change. Several years prior to the events in *M.G.*, when the local agency always filed for goal changes prior to termination petitions, a case would be delayed while the parents potentially appealed the grant of goal change and then separately opposed and appealed the grant of termination. Consequently, the child would remain in foster care while the case twice progressed through the appellate court system. In an effort to achieve permanency for the child, the court and the local agency considered the requirements of the Juvenile Act and the Adoption Act and the practices of the child services agencies in the other counties, and determined that a termination petition could be filed without a court-ordered goal change. Accordingly, the agency changed its practices.

The Superior Court in *M.G.* next considered the statutory provisions relating to goal changes and termination petitions. It noted that involuntary termination of parental rights is conducted under the aegis of the Orphans' Court pursuant to the Adoption Act while permanency planning for dependent children, which is governed by Section 6351 of the Juvenile Act, is implemented by the Juvenile Court. Neither act, it concluded, contains a provision expressly requiring a court-ordered goal change to precede the filing of a termination petition. Instead, the court looked to Section 6351(f)(9), which details one of the factual findings a Juvenile Court must make at each six-month review hearing regarding the appropriate permanency goal for the child:

> (f) Matters to be determined at permanency hearing. At each permanency hearing, a court shall determine all of the following:
>
> * * * *
>
> (9) If the child has been in placement for at least 15 of the last 22 months . . ., *whether the county agency has filed or sought to join a petition to terminate parental rights* and to identify, recruit, process and approve a qualified family to adopt the child unless:
>
> (i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;
>
> (ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or
>
> (iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

42 Pa.C.S. § 6351(f)(9) (emphasis added). It concluded, "a plain reading of the Juvenile Act suggests that one of the matters that may be determined at a six-month permanency hearing where the ostensible goal is reunification but the child has been in placement for an extended period, is whether the

social services agency has filed a termination petition." *M.G.*, 855 A.2d. at 71–72. The provision's use of the past tense, "has filed," according to the Superior Court, suggests that an agency may file a termination petition without first seeking a court-ordered goal change.

Although the parent in *M.G.* attempted to rely on a contrary statement by this Court in *In re H.S.W.C.–B.*, 575 Pa. 473, 836 A.2d 908, 911 (2003), the Superior Court concluded that the statement constituted non-binding *obiter dictum.*[8] The court also rejected the parent's argument that the Orphans' Court could not usurp the Juvenile Court's jurisdiction over goal changes by considering a termination petition without a prior court-ordered goal change. It observed that the Orphans' Court and the Juvenile Court are simply divisions within the Court of Common Pleas and that, in *M.G.*, the same judge presided in both courts.[9]

In the case at bar, Mother reasserts many of the arguments raised by the parent in *M.G.*, which she contends was incorrectly decided. Additionally, she argues that the Superior Court in *M.G.* failed to consider the entirety of Section 6351, which she claims contradicts the court's assumption that an agency may file a termination petition in the Orphans' Court without first securing a goal change from the Juvenile Court.

As in *M.G.*, Mother urges this Court to sustain a clear division between the Juvenile Court and the Orphans' Court, which she contends had been established through Superior Court cases.[10] In *In re M.B., K.B., J.B., L.B.*, 388 Pa.Super.

8. In *H.S.W.C–B*, we held that denials of goal changes and termination petitions, as well as grants of such petitions, were final and appealable. Although not part of the basis of our decision in that case, we commented, "Proposed goal changes and petitions to terminate parental rights ... are often sought concurrently; one cannot seek to terminate parental rights if the goal is still reunification." 836 A.2d at 911.

9. The Superior Court in the instant case and in *In re N.W.*, 859 A.2d 501 (Pa.Super.2004), concluded that a goal change was not a condition precedent even when the Orphans' Court judge and the Juvenile Court judge are not the same person, as they may well be. *See supra* at page 570, n. 2, 901 A.2d at 1018, n. 2.

10. As previously noted, Mother acknowledges that the statute provides for a Juvenile Court Judge to act as an Orphans' Court Judge and hear

381, 565 A.2d 804 (1989), she notes, the Superior Court held that an order changing the permanency goal to adoption constitutes a final and appealable determination by the Orphans' Court that the services provided to the parent by CYS were adequate, but that the parent is nonetheless incapable of caring for the child. She highlights the Superior Court's decision in *In re A.L.D.*, 797 A.2d 326 (Pa.Super.2002), in which the court held that a Juvenile Court, considering a termination petition, cannot reconsider the decision of the Orphans' Court regarding the sufficiency of the services.[11] To reinforce this line of reasoning, Mother invokes our comment in *H.S.W.C.-B.* suggesting that a goal change must precede termination. *See H.S.W.C.-B.*, 836 A.2d at 911 ("[O]ne cannot seek to terminate parental rights if the goal is still reunification.").

Turning to the language of Section 6351, Mother contends that the Superior Court's decision ignores the import of subsection (f.1)(2):

> (f.1) Additional determination.—Based upon the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following:
>
> * * * *
>
> (2) *If and when the child will be placed for adoption, and the county agency will file for termination of parental rights* in cases where return to the child's parent, guard-

matters under both statutes concurrently pursuant to 42 Pa.C.S. § 6351(i). She contends that the reverse does not apply, and that in the case at bar an Orphans' Court judge could not assume the role of a Juvenile Court judge and consider matters regarding goal changes. However, as noted, in many counties one judge presides over the functions of both the Orphans' Court and the Juvenile Court.

11. As noted by Mother, the Superior Court has reaffirmed its conclusion that a Juvenile Court's decision to change a goal to adoption forecloses any debate regarding the sufficiency of the services provided by the agency to the parent. *See Adoption of T.B.B.*, 835 A.2d 387 (Pa.Super.2003). This statement of law is not contested; the contest instead involves its relevance to a situation where no goal change determination has been made by any court.

ian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child. [Emphasis added].

She asserts that the emphasized language grants the Juvenile Court the exclusive power to determine "if and when" CYS will file a petition to terminate parental rights. She notes that that decision is based on the determinations made under subsection (f), including subsection (f)(4), relating to the "appropriateness and feasibility of the current placement goal for the child." Mother claims that this language contradicts the Superior Court's "plain reading" of subsection (f)(9) based merely on the use of past tense.

Given the alleged conflict between the subsections, Mother argues that the Rules of Statutory Construction, *see* 1 Pa.C.S. §§ 1921, 1922, require this Court to look to the intent of the legislature in enacting the statute and construe the statute to give effect to all of its provisions.[12] She argues that the Superior Court's interpretation improperly vitiates subsection (f.1)(2) and, with it, the power of the Juvenile Court to decide whether and when to file a termination petition. She also contends that the Superior Court's construction negates the Juvenile Court's ability to determine when a termination petition should *not* be filed under subparagraphs (f)(9)(i)-(iii), and specifically subparagraph (iii), which pertain to situations

---

**12.** In pertinent part, Section 1921 (Legislative intent controls), provides
> The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

1 Pa.C.S. § 1921(a).

In pertinent part, Section 1922 (Presumptions in ascertaining legislative intent), provides
> In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used:
> (1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.
> (2) That the General Assembly intends the entire statute to be effective and certain.
> (3) That the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth.

1 Pa.C.S. § 1922.

where the family has not been provided the necessary services. She argues that the appropriate time to consider the adequacy of the services provided to the family by the agency is at a permanency goal change hearing. Any goal change hearing after termination, according to Mother, would not address the adequacy of services provided to a parent whose rights have been terminated, and thus, would result in a deprivation of parents' rights to due process. Consequently, Mother contends the legislature could not have intended a result that would deny parents' rights under the Fifth and Fourteenth Amendments of the United States Constitution. Moreover, she asserts that the interpretation is improper because it could result in a denial of a parent's right to equal protection, because some parents would be provided the opportunity to raise issues denied to others.

According to Mother, the proper construction of Section 6531, requiring a court-ordered goal change prior to the filing of a termination petition, gives effect to all provisions of the statute, allows for judicial review of the actions of the county agency, and does not violate a parent's rights to due process and equal protection. Consequently, she recommends that this Court "correct" the tense of the verb "filed or sought" in subsection (f)(9) to indicate the present rather than the past tense, which she contends is within our authority under Section 1923 of the Rules of Statutory Construction,[13] and thus, require a change of goal to precede any termination petition.

Conversely, CYS argues that the Superior Court properly relied upon *M.G.*, which in turn properly construed the relevant statutory provisions. CYS contends that the Superior Court correctly read the plain language of subsection (f)(9) to

**13.** § 1923. Grammar and punctuation of statutes

> (a) Grammatical errors shall not vitiate a statute. A transposition of words and clauses may be resorted to where a sentence is without meaning as it stands.

> \* \* \* \*

> (c) Words and phrases which may be necessary to the proper interpretation of a statute and which do not conflict with its obvious purpose and intent, nor in any way affect its scope and operation, may be added in the construction thereof.

1 Pa.C.S. § 1922.

allow an agency to file a petition to terminate parental rights without first obtaining a court-ordered goal change based on the use of the past tense, "has filed." Moreover, CYS maintains that Mother's contention that subsections (f.1)(2) and (f)(9) conflict is misplaced because (f.1)(2) does not apply to (f)(9). Indeed, according to CYS, subsection (f.1), entitled "additional determination," is implicated only once a goal has been identified pursuant to determinations made under subsection (f).[14] CYS contends that each of the five subsections of (f.1) corresponds to a discrete permanency goal, which is determined with regard to the findings previously made under subsection (f). Subsection (f.1) only pertains to what occurs after a goal is determined. Specifically, the section relied upon by Mother, (f.1)(2), only applies once adoption is selected as the appropriate goal and cannot apply if reunification remains the goal.[15]

CYS asserts that nothing in the Adoption Act or the Juvenile Act requires a goal change prior to the filing of a termination petition, and in fact contends that the federal ASFA, as incorporated into the state system, encourages concurrent planning whereby termination proceedings occur while services aimed at reunification continue. CYS maintains that the concurrent planning system actually provides parents more time to regain custody of their children than under the old system where the agency would cease providing reunification services at the time of a court-ordered goal change to adoption, because with concurrent planning, CYS must continue to provide services until the termination hearing. CYS asserts that after the filing of the termination petition, CYS "could [withdraw], and has in the past, withdrawn its petition for termination of parental rights if the parents have achieved or made substantial progress on their goals prior to the termination hearing." Brief for Appellee at 18.

14. The Superior Court in *M.G.* did not address the interaction of subsections (f)(9) and (f.1).

15. The attorney for the child filed a brief concurring with CYS's analysis.

CYS further maintains that concurrent planning eliminates one layer of appeal and consequently years of delay in achieving permanency for children. Under concurrent planning, CYS contends, the process is streamlined by not requiring a goal change determination, and the related appellate delay, prior to the filing of a termination petition. Moreover, the agency maintains that no due process violation results because a court presented with a termination petition prior to a goal change will also consider whether the parent has satisfied the service plan goals in determining whether termination is in the best interest of the child.

Initially, we disagree with Mother that our statement in *H.S.W.C.-B.*, 836 A.2d at 911, controls our decision in this case. In *H.S.W.C.-B.*, we held that denials of goal change petitions, as well as grants of such petitions, are final and appealable. We did not address whether the statutory language allows a termination petition to precede a goal change. Accordingly, the statement that "one cannot seek to terminate parental rights if the goal is still reunification" constitutes non-binding *obiter dictum*. Rather, for the following reasons, we conclude that, under the relevant statutory language, an agency may file a termination petition even where reunification remains the permanency goal for the child.

Mother fails to direct this Court's attention to any language in Section 6351 (relating to goal changes) or in Section 2511 (relating to termination petitions) evincing a requirement that an adjudicated goal change to adoption precede the filing of a petition to terminate parental rights. Although Mother cites valid caselaw setting forth the principle that a Juvenile Court decision ordering a goal change and the underlying determination of the adequacy of services provided by an agency cannot be questioned by a subsequent Orphans' Court considering termination, those cases are not relevant when a goal change decision has not been made. Moreover, nothing in the statutory language prevents the Orphans' Court from considering similar issues when determining whether the evidence supports termination of parental rights and whether such termination is in the best interest of the child.

Under Section 6351, the Juvenile Court must hold permanency review hearings for a dependent child every six months until "the child is returned to the child's parent, guardian or custodian or removed from the jurisdiction of the court." 42 Pa.C.S. § 6351(e)(3). The hearings are "for the purpose of determining or reviewing the permanency plan of the child, the date by which the goal of permanency for the child may be achieved and whether placement continues to be best suited for the safety, protection and physical and mental and moral welfare of the child." § 6351(e).

As previously noted, Section 6351(f) lists a number of discrete issues that the court must consider at each hearing to determine the appropriateness of the current plan and placement. One of the factors deemed necessary for a court to consider is whether the child has been in placement for fifteen of the last twenty-two months. *Id.* § 6351(f)(9). If the child falls into this category, the court must make several findings to determine the appropriateness of the current placement and goal,—one of which is whether "the county agency has filed or sought to join a petition to terminate parental rights." *Id.* As is relevant to instant case, subsection (f)(9) contemplates a situation where the agency has filed or sought to join a termination petition in the past, without prior court approval. If court approval were required, the statute would refer not to the agency's filing of a petition, but rather to a court order directing the agency to file a termination petition. Additionally, a finding that the agency has filed a termination petition obviously would provide the trial court with substantial information regarding the appropriateness of the current plan and placement, at least from the agency's perspective.

Moreover, the subsection aims not to protect the parent from the premature filing of a termination petition but rather to determine why a petition has not been filed for a child who was been in foster care for an extended time. *Cf.* 42 U.S.C. § 675(5)(E) (requiring a case review system to include a procedure assuring that a termination petition shall be filed if

a child is in care for an extended period of time in the absence of specified exceptions).[16] Consequently, we conclude that nothing in subsection (f)(9) suggests that an agency cannot file for termination of parental rights while the permanency goal continues to be reunification.

Consideration of subsection (f.1) does not change this conclusion because it applies only after consideration of subsection (f). Armed with the determinations made under subsection (f), including whether an agency has filed a termination petition, the trial court under subsection (f.1) must decide whether the child will be (1) "returned to the child's parent, guardian or custodian," (2) "placed for adoption, and the county agency will file for termination of parental rights," (3) "placed with a legal custodian," (4) "placed with a fit and willing relative," or (5) "placed in another living arrangement intended to be permanent in nature which is approved by the court." 42 Pa.C.S. § 6351(f.1). If the court continues to believe reunification remains a viable goal despite the agency's filing for termination, the court applies subsection (f.1)(1) to determine whether and when the child should be returned to his parent—for example, once the parent meets the necessary service plan goals. Accordingly, concurrent planning continues.

**16.** Section 675(5)(E) provides:

[I]n the case of a child who has been in foster care under the responsibility of the State for 15 of the most recent 22 months, ... the State **shall** file a petition to terminate the parental rights of the child's parents (or, if such a petition has been filed by another party, seek to be joined as a party to the petition), and, concurrently, to identify, recruit, process, and approve a qualified family for an adoption, unless—

(i) at the option of the State, the child is being cared for by a relative;

(ii) a State agency has documented in the case plan (which shall be available for court review) a compelling reason for determining that filing such a petition would not be in the best interests of the child; or

(iii) the State has not provided to the family of the child, consistent with the time period in the State case plan, such services as the State deems necessary for the safe return of the child to the child's home, if reasonable efforts of the type described in section 671(a)(15)(B)(ii) of this title are required to be made with respect to the child....

42 U.S.C. § 675 (emphasis added).

Alternatively, if the court, after review of subsection (f), determines that adoption is the appropriate goal, then the court looks to subsection (f.1)(2) and determines "if and when" the child will be placed for adoption and when the county will file for termination. Obviously, if the court finds the agency has filed for termination previously, there is no need to determine when the agency will file for termination, and instead, the court merely considers when adoption proceedings will occur. The language, however, does not support Mother's reading that only the Juvenile Court may decide when to file a termination petition. Indeed, we note that the Adoption Act specifically provides the converse: "A petition to terminate parental rights ... may be filed by ... an agency." 23 Pa.C.S. § 2512(a). As with subsection (f), Mother cannot point to any provision in subsection (f.1) prohibiting the agency from filing a termination petition prior to a goal change to adoption.

Moreover, the legislative history favors an interpretation allowing an agency to file for termination prior to the filing of a goal change petition. As previously discussed, Pennsylvania modified its statutes relating to dependent children to comport with the ASFA's dual purposes of reunification and adoption. *See* 42 Pa.C.S. § 6301(b)(1) (providing that the Juvenile Act should be interpreted to preserve the unity of the family whenever possible or to provide another alternative permanent family when the unity of the family cannot be maintained....). ASFA requires state plans to provide for concurrent planning as a measure to limit the time children spend in the foster care system:

In order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which ... provides that ... reasonable efforts to place a child for adoption or with a legal guardian may be made concurrently with reasonable efforts of the type described in subparagraph (B)[relating to reunification].

42 U.S.C. § 671(a)(15)(F). Mother's construction of the statute. would inhibit the availability of concurrent planning in Pennsylvania. Instead, a construction of Section 6351(f) and

(f.1) to allow agencies to file termination petitions while still providing services to the parent under a plan maintaining reunification as the child's permanency goal comports with ASFA's provision encouraging concurrent planning. Moreover, as noted by CYF and the courts in this case and in *M.G.*, concurrent planning actually benefits parents by permitting continued services and scrutiny of parental progress toward meeting service plan goals. If we were to find that the legislative scheme requires *seriatim* planning (final goal change adjudication followed by termination adjudication), services to persons such as Mother would be cut off, scrutiny of their progress in reaching service plan goals could be diminished, and a period of limbo between the court-ordered goal change from reunification to adoption and the presumably eventual termination and adoption would occur, to the detriment of the parents of dependent children and, importantly, to the detriment of the all-important goal of achieving prompt permanency for these at risk children.

We conclude that Section 6351 does not require that a goal change precede the filing of a termination petition. Moreover, we reject Mother's argument that the Superior Court's construction violates the Rules of Statutory Construction by creating an interpretation undermining constitutional rights. Mother argues that allowing a termination petition to precede a goal change violates due process by denying parents the opportunity to be heard on the issues raised under subparagraphs 6351(f)(9)(i)-(iii), which would have been addressed at a goal change hearing. Mother is correct that those factors will have less weight attached to them if a termination petition has been filed prior to the goal change hearing. However, it does not follow that Mother has been denied due process because these issues could also be relevant, and if raised by a parent, carefully considered during the adjudication of the merits of the termination petition. Indeed, in the case at bar, the Juvenile Court took evidence during the termination hearing relating to the only potentially applicable subsection (f)(9) issue, the question of the adequacy of the services provided by

CYS. Notes of Testimony, 4/8/04, at 55, 106.[17] Reviewing the evidence, the court found that "CYS did all it could to reunite [Child] with Mother." Trial Court Slip Op. at 5. Consequently, Mother's argument asserting a denial of due process fails, as does her related argument that she was denied equal protection.

Accordingly, we affirm the decision of the Superior Court.

Justice CASTILLE, Justice NEWMAN, Justice SAYLOR and EAKIN and Justice BALDWIN join the opinion.

Chief Justice CAPPY files a concurring opinion.

Chief Justice CAPPY, concurring.

I agree with the majority opinion's conclusion that 42 Pa. C.S. § 6351 does not require that a child protective agency change its goal for a dependent child from reunification to adoption prior to seeking termination of parental rights. I write separately to set forth the analysis I would apply to reach this conclusion.

In that this case presents a question of statutory construction, the Statutory Construction Act of 1972 ("Act"), 1 Pa.C.S § 1501 *et seq.*, is controlling. The Act directs that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(1). In this regard, the Act sets forth two instructions. First, in 1 Pa.C.S.1921(b), the Act directs that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Second, in 1 Pa.C.S.1921(c), the Act directs that "[w]hen the words of the statute are not explicit," the General Assembly's intent may be ascertained by considering specified matters, which include the occasion and necessity for statute; circumstances of its enactment; mischief it remedies; object it seeks to attain; former law;

---

17. The additional factors under subparagraphs (f)(9)(i) (child is being cared for by a relative) and (ii) (county agency documented compelling reasons not to file for termination) are not relevant to Mother's situation.

consequences of particular interpretation; contemporaneous legislative history; and legislative and administrative interpretations of statute.

In the instant case, I could not discern from the majority opinion which one of 1 Pa.C.S.1921's subsections is being applied to determine 23 Pa.C.S. 6351's meaning. I conclude that the Fayette County Children and Youth Services correctly argues that the words used in subsection (f)(9), as to the matters the court is to determine at a permanency hearing, and in subsection (f.1), as to the additional determinations that are to follow, clearly state that a petition to terminate parental rights may be filed prior to a goal change to adoption. 23 Pa.C.S. 6315(f)(9),(f.1). (*See* Majority Opinion at 581–82, 901 A.2d at 1025–26). Therefore, I believe that this Court's interpretation of 42 Pa.C.S. 6351 should focus on the statute's language according to the rule set out in 1 Pa.C.S.1921(b) for the construction of statutes that are clear and unambiguous. In my view, the majority opinion should not include a consideration of the statutory factors in 1 Pa.C.S.1921(c) for the construction of statutes whose words are not explicit. *See Commonwealth v. Packer*, 568 Pa. 481, 798 A.2d 192, 196 (2002) (observing that only when the language of the statute is ambiguous does statutory construction under 1 Pa.C.S.1921(c) become necessary).

For this reason, I concur.