J-S18020-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INT. OF: G.E., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.P., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 357 MDA 2022 |

Appeal from the Dispositional Order Entered January 28, 2022
In the Court of Common Pleas of York County Juvenile Division at No(s):
CP-67-DP-0000316-2021

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED: AUGUST 25, 2022**

In this dependency case, S.P. ("Mother") appeals from the dispositional order granting her partial legal and physical custody of her son, G.E. ("Child"). Mother argues the court erred in awarding any legal or physical custody to the kinship care resources with whom Child had been residing during the dependency case. We affirm.

In July 2021, Child (born August 2007) was living with his father ("Father"), Father's paramour ("Paramour"), and Paramour's minor child. The police arrested Father and Paramour on allegations that they had drugged Child and Paramour's child and performed sex acts on them. *See* Order of Adjudication and Disposition, 8/13/21, at 1. Father was subsequently charged with dissemination of photo/film of child sex acts and child pornography. *Id.*

The court held a shelter care hearing, at which it found that Mother was residing in a motel room with her two other children, who were one and six

years old, and that Mother had not seen Child in at least several months. **See** Recommendation for Shelter Care Order, 7/26/21, at 2. The court transferred full legal and physical custody of Child to the York County Children and Youth Services Agency ("the Agency"). The court placed Child in kinship care with Paramour's parents ("Kinship Parents"). **Id.**

Shortly thereafter, the court adjudicated Child dependent, finding Child was "without proper care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals." **See** Order of Adjudication and Disposition at 2; **see** 42 Pa.C.S.A. § 6302. The court ordered Mother to "begin to have visitation as soon as possible," and ordered the placement goal to be "return to parent or guardian" with a concurrent goal of "[p]lacement with a [l]egal [c]ustodian." Order of Adjudication and Disposition at 3.

The court held a status hearing in November 2021 and ordered that Child's placement be transitioned to Mother "once she has secured appropriate housing." Status Review Order, 11/3/21, at 2. It found Mother had not visited Child in a month and ordered Mother "able to have unsupervised visitation with [Child]." **Id.** at 1. The court further provided, "If [Child] wishes to visit [M]other over the weekend or upcoming holiday, the Court is agreeable to any visitation that can be scheduled between [Child] and [M]other." **Id.** at 3.

Following a permanency review hearing in December 2021, the court entered an order finding that Mother had obtained suitable housing, but that Mother's contact with Child had been inconsistent. Permanency Review Order,

12/29/21, at 1, 4. The court ordered the placement goal for Child remain as "to return to parent or guardian," but changed the concurrent placement goal to adoption. *Id.* at 2. The court ordered Child to spend at least three weekends with Mother in the following month. *Id.* The court stated, "[W]e're going to see how [Child] adjusts to weekends with his mother. . . . [Child] wants to stay where he is with [Kinship Parents], and I'm going to give this another month." N.T., 12/29/21, at 24.

The court held a dispositional hearing on January 28, 2022. The Agency reaffirmed that its recommendation was for Child to be reunited with Mother. N.T., 1/28/22, at 5. Mother, through counsel, argued that the finding of dependency had been in relation to allegations against Father, and that the court had already determined that Mother had achieved the goal of obtaining suitable housing. *Id.* at 10. Mother therefore opposed "any custody being invested in the [Kinship Parents]." *Id.*

However, Child advised the court through counsel that he "wants to stay put where he is[.]" *Id.* at 8. Child's counsel also argued that Child is "working on his bond with his mother, and the least amount of disruption in his life is what he wants." *Id.* at 13. Child's guardian *ad litem* similarly argued that placing Child with Mother would require Child to change school districts, and accordingly, change his school-based therapist, and that Child "is maintaining stability with [Kinship Parents] who he's comfortable with and clearly bonded with. Additionally, in their home [are Paramour's child and sibling], who [Child] views as siblings of his own." *Id.* at 14-15.

- 3 -

The court stated it would issue a custody order giving partial custody to Kinship parents and partial custody to Mother in the form of three to four weekends a month. *Id.* at 12. The court explained, "[I]f Mother wants more time later . . . anybody can just bring a petition to modify into custody court, and we'll handle it in custody court. That way the Agency is not spending their valuable resources on this case anymore[.]" *Id.* Mother objected that "kinship status through dependency court does not confer standing for custody," to which the court responded that "standing for custody would be that [Child] has lived [with Kinship Parents] for more than six months and all of those sort[s] of things." *Id.* at 16-17. Mother also argued, "I'm not sure that we had reunification with Mother." *Id.* at 17.

Following the hearing, the court entered two orders. The first order was a dispositional order. It stated that "Legal Custody of the Child shall remain with the Mother, [Kinship Parents]. Physical Custody of the Child shall return to the Mother, [Kinship Parents]." Dispositional Order, 1/28/22, at 1. It stated Mother had obtained sufficient housing and had been having consistent visitation with Child on the weekends. *Id.* at 2. However, the order stated the court found it was "in the best interest of the child to remain in the primary physical custody of [Kinship Parents]" and provided, "Mother shall have rights of custody 3 weekends per month." *Id.* It provided that Father have supervised contact with Child in a therapeutic setting, and that Child have supervised contact with Paramour. It further stated, "The adjudication of dependency and juvenile court jurisdiction are hereby terminated." *Id.*

The second order also stated, "The adjudication of Dependency and Juvenile Court Supervision . . . is hereby terminated." Order for Termination of Court Supervision, 1/28/22, at 1. The order further stated the Agency's legal and physical custody of Child shall be discharged. *Id.* It stated Child had "been reunified with the Guardian and Mother, and the circumstances which necessitated the dependency adjudication and placement have been alleviated as to Mother." *Id.*

In its Rule 1925(a) opinion, the court explained that it had given shared legal custody and primary physical custody of Child to Kinship Parents because that was in Child's best interest and was "best suited to [Child's] safety[ ]and his well-being." Trial Court Opinion, 3/22/22, at 6, 10. The court observed that Mother did not exercise her right to visitation often or regularly, and therefore Child "barely knows Mother and . . . does not have a strong bond with Mother at this time." *Id.* at 9. Conversely, the court found Child "has stability, enjoys being placed with the minor child he has lived with for the past two years, and is bonded to [Kinship Parents]." *Id.* at 4. The court recounted that Child, who was 14 years old, continually requested to remain with Kinship Parents. The court concluded, "In consideration of [Child's] strong bond with [Kinship Parents], his desire to remain with the children that he views as his siblings, the fact that he is doing well physically and mentally, and his own request to preserve the stability he has found with [Kinship Parents], the Court ordered that [Child] would be unified with guardian and with Mother." *Id.* at 4-5; *see also id.* at 10 (the court stating it "has chosen

- 5 -

to unify [Child] with his current Guardian and with Mother"). The court cited 42 Pa.C.S.A §§ 6351(a), (e)(1), and (f.1)(1), as bases for its authority to place Child in accordance with his desires and his best interest.

Regarding the amount of custody awarded to Mother, the court took judicial notice of an interim custody order entered in 2007, reflecting a stipulation between Mother and Father giving Mother and Father shared legal custody of Child and Mother partial physical custody to be exercised three weekends per month. *Id.* at 2. The court therefore concluded that in ordering Mother to have custody on three weekends per month, "Mother is restored to the exact same custodial rights that she had prior to [Child]'s adjudication of dependency[.]" *Id.* at 10. The court explained that either party could pursue a change in custody via the filing of a petition, and further custody decisions could be made through custody proceedings.

Mother timely appealed and raises the following issue:

Whether the trial court abused its discretion and/or erred as [a] matter of law when [in] its dispositional order and subsequent order for termination of court supervision it granted shared legal custody to Mother and kinship resource and primary physical custody to kinship resource and partial rights of physical custody to Mother. In so doing, did the trial court err and/or abuse its discretion by bestowing custody rights to the kinship resource, parties that would not have had standing to assert custody rights in a private custody matter?

Mother's Br. at 6.

Mother argues the court erred in granting legal custody and physical custody to Kinship Parents, because kinship status during dependency

proceedings does not confer custody standing. Mother's Br. at 18. She argues that in **In Int. of C.G.**, 735 A.2d 1226 (Pa.1999), the Supreme Court held that "foster parents do not have standing to seek or contest awards of custody concerning their foster children." **Id.** She argues the Court noted that the relationship between the child and his foster parents "is by its nature subordinate to both the relationship between the agency and the child and . . . between the child and the child's parents." **Id.** at 18-19 (quoting **C.G.**, 735 A.2d at 1228). Mother further asserts that in **K.R.R. v. M.M.R.**, No. 135 WDA 2021, 2021 WL 2935859 (Pa.Super. 2021) (unpublished memorandum), this Court further held that kinship parents have no greater rights than foster parents, and do not have standing to seek custody based on *in loco parentis*. Mother argues that although the dependency statute instructs the court to make decisions in a child's best interest, "the leeway granted to the [trial court] does not include the right to create rights for parties that would otherwise not have them[.]" Mother's Br. at 22.

Mother further contends the court's finding that Child had been "reunified with the Guardian and the Mother" was inaccurate because "[r]eunification can only occur with a guardian if a guardianship existed prior to the adjudication." **Id.** at 15. Mother contends Kinship Parents had never been Child's legal guardians and "had no custody rights prior to [Child's]

adjudication." *Id.* at 16. Mother claims had the court changed the goal from reunification, she would have objected. [1]

We review orders in dependency cases for an abuse of discretion. *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). We will accept the trial court's findings of fact and credibility determinations so long as they have support in the record. *Id.* We employ a de novo standard of review over questions of law. *In re Adoption of S.E.G.*, 901 A.2d 1017, 1018 n.1 (Pa. 2006).

Section 6351 of the Juvenile Act governs the actions a court may take in the disposition of a dependent child. The court may allow the child to live at home, may grant temporary custody to a qualified individual or agency, or may name an individual as a permanent legal custodian. 42 Pa.C.S.A. § 6351(a). As the dependency case proceeds, the court must conduct regular permanency hearings at which it considers certain factors and consults with the child to determine the permanency plan/goal for the child. *Id.* at §§ 6351(e)(1), (f). The child's permanency goal and ultimate disposition is to be determined according to the best interest of the child. *Id.* at §§ 6351(e)(1), (g).[2]

---

[1] The guardian *ad litem* for Child submitted a brief in support of the trial court's order, arguing that transferring custody to Kinship Parents was in Child's best interest. Father submitted a letter stating he would not be filing a brief, and the Agency submitted a letter stating it is not taking a position in the appeal.

[2] Although a court may not adjudicate a child dependent when a non-custodial parent is ready, willing, and able to provide adequate care for the child, the court is obligated to decide the disposition of a dependent child solely
*(Footnote Continued Next Page)*

For a child younger than 16, the court has four options for a permanency goal. First, it may elect to have the child "returned to the child's parent, guardian, or custodian." *Id.* at § 6351(f.1)(1). Second, it may place the child for adoption, where return to an existing parent, guardian or custodian is not in the child's best interest. *Id.* at § 6351(f.1)(2). Third, it may place the child with a legal custodian, where the previous two options are not in the child's best interest. *Id.* at § 6351(f.1)(3). Finally, if none of the foregoing options are in the child's best interest, it may place the child with a fit and willing relative. *Id.* at § 6351(f.1)(4). A court may simultaneously plan for two conflicting permanency goals. *In re R.J.T.*, 9 A.3d at 1186.

The third permanency option—placement with a legal custodian ("PLC")—is "an arrangement whereby a juvenile court discontinues court intervention as well as supervision by a county agency, and awards custody of a dependent child, on a permanent basis, to a custodian. Parental rights are not terminated." *In re S.H.*, 71 A.3d 973, 977 (Pa.Super. 2013).[3] When it places the Child with a PLC, the court may grant the child's parents visitation rights and refer issues of support and continuing parental visitation to the applicable division of the court. 42 Pa.C.S.A. at § 6351(a)(2.1). The use of the

---

according to the child's best interest. *In re H.V.*, 37 A.3d 588, 593 (Pa.Super. 2012) ("in a change of goal proceeding, the trial court must focus on the child and determine the goal in accordance with the child's best interest and not those of his or her parents").

[3] "The custodian is typically provided a financial subsidy for the child by the local county children and youth agency." *In re S.H.*, 71 A.3d at 977.

term "permanent" means that the PLC will retain custody of the child after the close of the dependency case. It does not mean that a parent or other party with standing cannot petition the court for full legal and physical custody of the child. **See In re S.H.**, 71 A.3d at 979 ("This language does not confer or divest parents of any substantive rights but rather addresses the proper venue for visitation and support matters following the grant of a permanent legal custody arrangement"). The court may only grant an individual PLC status after determining "that neither reunification nor adoption is best suited to the child's safety, protection and physical, mental and moral welfare." **Id.** at 973; 18 Pa.C.S.A. § 6351(f.1)(2).

When Child was adjudicated dependent, the court removed him from his Father's home—Child was not living with Mother and had not seen Mother in at least several months. Prior to the onset of the dependency case, Kinship Parents did not have, and had never had, custody of Child. During the dependency case, the Agency had both legal and physical custody of Child. **See, e.g.**, Order of Adjudication and Disposition, 8/13/21, at 2. Therefore, where the dispositional order under review states that legal custody "shall remain" with Mother and Kinship Parents and physical custody "shall return" to Mother and Kinship Parents, it is inaccurate.

Furthermore, in granting shared physical and legal custody to Mother and Kinship Parents, the court did not "reunify" Child "with the Guardian and Mother," as it stated in the order terminating court supervision. The Rules of Juvenile Court Procedure define "guardian" as "any parent, custodian, or other

- 10 -

person who has legal custody of a child, or person designated by the court to be a temporary guardian for purposes of a proceeding." Pa.R.J.C.P 1120. Prior to the dispositional order granting them shared custody of Child, Kinship Parents did not meet the definition of "guardian," and therefore Child could not be reunified with them as such.

However, the court's intent, as explained in its Rule 1925(a) opinion, was to "unify" Child with Kinship Parents and create a guardianship role for them, as it found this to be in Child's best interest. **See** Trial Court Opinion, 3/22/22, at 4-5, 10. It awarded custody to Kinship Parents, who had not previously had custody, granted Mother partial custody, terminated the dependency case, and referred the matter to the division of the court which handles custody matters. In doing so, the court, in essence, named Kinship Parents as Child's permanent legal custodians. The court was authorized to transfer custody of Child to a permanent legal custodian, and to terminate dependency proceedings on this basis, after it found this to be in Child's best interest. **In re S.H.**, 71 A.3d at 973; 42 Pa.C.S.A. §§ 6351(a)(2.1), (f.1)(2).

Mother argues that the court erred in giving custody, and, accordingly, standing to litigate custody, to Kinship Parents, because they previously had none. However, while foster parents and kinship resources do not have automatic standing in a dependency case, a dependency court has the power to award custody to a fit individual or agency on either a temporary or a permanent basis. 42 Pa.C.S.A. §§ 6351(a)(2)(i), (a)(2.1). The legislature has thereby imbued the court with the power to "create rights for parties that

- 11 -

would otherwise not have them," insofar as granting PLC status confers standing to litigate custody, when doing so would be in the best interest of the child. Notably, Mother does not argue that giving custody to Kinship Parents was not in Child's best interest.

We recognize that the court did not use the term "permanent legal custodian" in its order or opinion. Instead, as described above, the court incorrectly stated it "reunified" Child with "the Guardian and Mother." However, the court's intent was clear, and its disposition of Child was authorized under the statute. To disturb the court's order in this instance would unnecessarily elevate form over function.

Mother also argues that the court never changed the permanency goal from reunification. However, she advances no authority mandating that a court may only enter a disposition matching the most recent permanency goal. We observe that, to the contrary, the Supreme Court has held that the court may go so far as to terminate parental rights, even where the permanency goal remains reunification. *See In re Adoption of S.E.G.*, 901 A.2d at 1026, 1029; *see also In re R.J.T.*, 9 A.3d at 1183 n.6 (concluding that "an order to continue, modify, or terminate the current placement, as required by the statute, is synonymous with a decision to continue or change the permanency plan goal"). Mother does not contend that she lacked notice of this possible outcome such that her due process rights were violated, and we note that while the primary permanency goal had been listed in previous orders as

reunification with Mother, placement with a legal custodian and adoption had also been listed as concurrent permanency goals.

Ultimately, Mother has not raised an issue requiring reversal. We therefore affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/25/2022