990 A.2d 777 (2010)
In the Interest of R.J.T., minor.
Appeal of Allegheny County Office of Children, Youth and Families.
No. 269 WDA 2009.
Superior Court of Pennsylvania.
Submitted June 29, 2009.
Filed February 19, 2010.
Mark B. Greenbelt, Pittsburgh, for appellant.
Judith E. Patterson, Pittsburgh, for appellee.
Sharon M. Biasca, Pittsburgh, for R.T., participating party.
Linell A. Lee, Sewickley, for J.C.T. participating party.
BEFORE: FORD ELLIOTT, P.J., SHOGAN and POPOVICH, JJ.
OPINION BY SHOGAN, J.:
¶ 1 The Allegheny County Office of Children, Youth and Families ("CYF" or "the Agency") appeals from the order entered January 23, 2009, denying CYF's motion, made orally at the permanency review hearing on that date, to change the permanency goal for the minor dependent child, R.J.T. ("Child"), from reunification to adoption pursuant to the Juvenile Act, 42 *778 Pa.C.S.A. §§ 6301, et seq.[1] Additionally, counsel for Appellee Mother has filed a petition to withdraw. We grant counsel's petition to withdraw, and we reverse and remand the trial court's order.
¶ 2 Child was born in December of 2006. He was removed from his parents' care on January 23, 2007, by emergency custody authorization. On February 7, 2007, Child was adjudicated dependent, pursuant to 42 Pa.C.S.A. § 6302. He was removed from the physical custody/care of his paternal grandmother and placed in a foster home on that date.
¶ 3 The trial court set forth the factual background and procedural history of this appeal as follows:
The initial reason for CYF involvement was domestic violence in the home. R.T. (hereinafter "Mother") and J.T. (hereinafter "Father") are still married, but are currently not living together. At the time of the [permanency review hearing on January 23, 2009], Mother was pregnant with a child that was not fathered by Father. [Child's] [f]oster [p]arents [("Foster Parents")] are a married couple who have two children of their own.... Foster Parents also have medical and educational guardianship over Child. A standard permanency review hearing was held [on January 23, 2009], at which time CYF moved that the permanency goal of Child be changed to adoption. KidsVoice, the guardian ad [IJitem for Child, joined in the goal change request. At the permanency hearing, both Mother and Father objected to the goal change and indicated the[y] would like for Child to return home so Mother, Father, and Child can be one family.
At the time of Child's placement, Mother and Father were living together and it was alleged that domestic violence issues created an unsafe environment for Child that necessitated his removal from their care. In addition, it was asserted that Mother and Father had drug and/or alcohol problems that required treatment. Both of these issues were included into the Family Service Plan ("FSP") created for this family. Father had been incarcerated for most of 2008, and was not released until September 30, 2008.
Trial Court Opinion, 4/28/09, at 2-3.
¶ 4 At the permanency review hearing on January 23, 2009, CYF presented testimony from Dr. Neil Rosenblum, who conducted interactional assessments of the family, and Sarah Klancer, a caseworker for CYF. Mother and Father also testified on their own behalf. Additionally, Father's counsel presented the testimony of Robert Barr, the foster care worker from Bair Foundation, through cross-examination. When CYF orally requested the trial court to change the goal for Child from reunification to adoption, CYF's counsel stated that CYF would continue to provide services to Mother and Father.
¶ 5 The trial court found the following facts from the testimony at the permanency review hearing:
Father testified that as of the date of the hearing, he had approximately 70-80 days remaining on his probation and no further charges were pending against him. To remedy her drug/alcohol issues, Mother testified that she tries to attend a meeting once per week.
At the time of the hearing, Child was making progress with Foster Parents, however, a few months prior to the hearing, on October 21, 2008, Foster Parents had filed their 30-day notice for Child's removal from their home. Foster *779 Parents told CYF that Child's increased difficult behavior, such as three[-]hour long temper tantrums, Father's release from prison, and pressure from extended family members[,] were the [bases] for their request to have Child sent to another placement. Foster Parents recanted this request on November 17, 2008[,] and testimony was presented that Child was making great progress in his behavior. Child's temper tantrums were down to 15 to 20 minutes and Child was talking more, which made it easier for him to communicate his needs to Foster Parents.
Child attends visits with both Father and Mother. Father only visited with Child twice in the past year at the time of the hearing due to his incarceration and the fact that he could not afford the cost of the Sheriff he was required to have present at his visits. There was testimony by CYF, however, that the visits between Father and Child went well. CYF also testified that they received reports that Mother's visits with Child have gone well and that she interacts well with Child.
Trial Court Opinion, 4/28/09, at 2-3.
¶ 6 Moreover, the trial court made the following findings of fact based on Dr. Rosenblum's testimony:
Dr. Neil Rosenblum has performed many interactional interviews and individual evaluations in this case, including interactionals between Father and Child[,] and Mother and Child[,] as well as individual evaluations with Mother and Foster Parents. An interactional between Father and Child took place on December 18, 2008. Dr. Rosenblum testified that during the interactional with Child, Father exhibited warm, nurturing behavior. Father demonstrated evidence of being invested in Child and Dr. Rosenblum testified that Father's relationship with Child is very important to him. Furthermore, Father showed intuitive skills by bringing age-appropriate toys for Child and showing appropriate enthusiasm for activities while interacting with Child. Child also reacted well to Father. Before the interactional began, Dr. Rosenblum observed Father and Child playing together in the waiting room. Father brought balloons and a riding toy for Child's entertainment. Dr. Rosenblum testified that Child was happy to go back with Father to the interview room and acted enthusiastically during the interactional.
Dr. Rosenblum also performed interactionals with Mother and Child with the most recent one occurring in July 2008. Dr. Rosenblum testified that Mother has good parenting skills and does well with Child.
During the hearing, Dr. Rosenblum testified that his recommendation is dual tracking. The reasons behind his recommendation were[,] first, ... he would like to conduct further evaluations of Foster Parents. The 30-day notice filed by Foster Parents raised a "red flag" in his opinion in terms of Foster Parents' commitment to child. Though it was retracted not even a month after filed, Dr. Rosenblum wants to test the "limits of their commitment" to Child and be sure that[,] if the goal were to ever change, this would be a secure placement. Second, Dr. Rosenblum also recognized that Mother and Father are active in their pursuits to regain custody of Child.
Trial Court Opinion, 4/28/09, at 3-4.
¶ 7 After the close of the permanency review hearing on January 23, 2009, the trial court entered the order denying CYF's goal change request. CYF filed a timely notice of appeal on February 18, *780 2009.[2] In an order dated February 20, 2009, and entered February 24, 2009, the trial court directed CYF to file a Concise Statement of Errors Complained of on Appeal within twenty-one days. CYF complied by filing its Rule 1925(b) Statement on March 4, 2009.[3]
¶ 8 On appeal, CYF raises one issue:
Whether the trial court abused its discretion by denying the request of Appellant, Allegheny County Office of Children, Youth and Families for a goal change to adoption for a two[-]year[-]old child who has been in placement for 22 months[?]
CYF's Brief at 4.
¶ 9 We have explained our standard of review in dependency cases as follows:
[W]e must accept the facts as found by the trial court unless they are not supported by the record. Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination as opposed to the findings of fact, and must order whatever right and justice dictate. We review for abuse of discretion. Our scope of review, accordingly, is of the broadest possible nature. It is this Court's responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. Nevertheless, we accord great weight to the court's fact-finding function because the court is in the best position to observe and rule on the credibility of the parties and witnesses.
In the Interest of D.P., Minor, 972 A.2d 1221, 1225 (Pa.Super.2009) (quoting In re CM., 882 A.2d 507, 513 (Pa.Super.2005)).
¶ 10 In a change of goal proceeding, the best interests of the child, and not the interests of the parent, must guide the trial court, and the parent's rights are secondary. In re A.K., 936 A.2d 528, 532-533 (Pa.Super.2007). The burden is on the Agency to prove the change in goal would be in the child's best interests. In Interest of M.B., 449 Pa.Super. 507, 674 A.2d 702, 704 (1996) (citing In Interest of Sweeney, 393 Pa.Super. 437, 574 A.2d 690, 691 (1990)). In contrast, in a termination proceeding, the focus is on the conduct of the parents as assessed against 23 Pa.C.S.A. § 2511. In re M.B., 674 A.2d at 705.
¶ 11 With regard to a dependent child, in In re D.A., 801 A.2d 614 (Pa.Super.2002) (en banc), this Court explained:

*781 [A] court is empowered by 42 Pa.C.S. § 6341(a) and (c) to make a finding that a child is dependent if the child meets the statutory definition by clear and convincing evidence. If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S. § 6351(a).
Id. at 617.
¶ 12 Regarding the disposition of a dependent child, § 6351(e), (f), (f.1), and (g) of the Juvenile Act provides the trial court with the criteria for its permanency plan for the subject child. Pursuant to those subsections of the Juvenile Act, the trial court is to determine the disposition which is best suited to the safety, protection and physical, mental and moral welfare of the child.
¶ 13 Section 6351(e) of the Juvenile Act provides in pertinent part:
(e) Permanency hearings.
(1) [t]he court shall conduct a permanency hearing for the purpose of determining or reviewing the permanency plan of the child, the date by which the goal of permanency for the child might be achieved and whether placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child. In any permanency hearing held with respect to the child, the court shall consult with the child regarding the child's permanency plan in a manner appropriate to the child's age and maturity....
(2) If the county agency or the child's attorney alleges the existence of aggravated circumstances and the court determines that the child has been adjudicated dependent, the court shall then determine if aggravated circumstances exist. If the court finds from clear and convincing evidence that aggravated circumstances exist, the court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the child's parent, guardian or custodian or to preserve and reunify the family shall be made or continue to be made and schedule a hearing as provided in paragraph (3).
42 Pa.C.S.A. § 6351(e).
¶ 14 Further, regarding permanency, § 6351(f) and (f.1), and (g) provide:
(f) Matters to be determined at permanency hearing.At each permanency hearing, a court shall determine all of the following:
(1) The continuing necessity for and appropriateness of the placement.
(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.
(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.
(4) The appropriateness and feasibility of the current placement goal for the child.
(5) The likely date by which the placement goal for the child might be achieved.
(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.
(6) Whether the child is safe.
* * *
(9) If the child has been in placement for at least 15 of the last 22 months or *782 the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:
(i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;
(ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or
(iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.
* * *
(f.1) Additional determination. Based upon the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following:
(1) If and when the child will be returned to the child's parent, guardian or custodian in cases where the return of the child is best suited to the safety, protection and physical, mental and moral welfare of the child.
(2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.
(3) If and when the child will be placed with a legal custodian in cases where return to the child's parent, guardian or custodian or being placed for adoption is not best suited to the safety, protection and physical, mental and moral welfare of the child.
(4) If and when the child will be placed with a fit and willing relative in cases where return to the child's parent, guardian or custodian, being placed for adoption or being placed with a legal custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.
(5) If and when the child will be placed in another living arrangement intended to be permanent in nature which is approved by the court in cases where the county agency has documented a compelling reason that it would not be best suited to the safety, protection and physical, mental and moral welfare of the child to be returned to the child's parent, guardian or custodian, to be placed for adoption, to be placed with a legal custodian or to be placed with a fit and willing relative.
* * *
(g) Court order.On the basis of the determination made under subsection (f.1), the court shall order the continuation, modification or termination of placement or other disposition which is best suited to the safety, protection and physical, mental and moral welfare of the child.
* * *
*783 42 Pa.C.S.A. § 6351.[4]
¶ 15 Here, although Child had been in placement since February of 2007 and, thus, for approximately 24 months at the time of the permanency hearing on January 23, 2009, the trial court decided not to change the goal from reunification to adoption. The trial court found that reunification was best suited to Child's safety, protection, and physical, mental, and emotional welfare. The trial court provided several reasons for its conclusion. First, the trial court found that the long-term stability of Child's current placement in foster care with his foster parents was uncertain. Second, the trial court found that Mother and Father had worked toward their FSP goals to become a reunified family, and had been attempting to achieve their goal of eliminating the domestic violence in their household, which would alleviate the original reason which caused Child to be placed in CYF care. Additionally, the trial court recognized that, at the time of the hearing, Mother was pregnant with another child, not fathered by Father, and that both Mother and Father acknowledged that the issues concerning the new child would need to be addressed through counseling. Finally, the trial court considered that Mother and Father have positive interaction with Child and positive parenting skills.
¶ 16 At the same time, the trial court found that the interaction between Child and Foster Parents was not known from the record and had not been evaluated recently. The trial court took into account Dr. Rosenblum's statement that he would like to conduct an interactional evaluation between Foster Parents and Child to ascertain the status of their relationship. The trial court concluded:
Based upon the foregoing, this [c]ourt concluded that the best interest and permanent welfare of Child at this time is to not change the goal to adoption, but for the goal to remain reunification. By doing this, Father and Mother have the opportunity to come into full compliance with all of their FSP goals. Both Mother and Father are currently trying to do so, both separately and together. Furthermore, it allows additional time to satisfy this [c]ourt's serious concerns about the permanence of Child's current placement and Child's attachment to Foster Parents.
Trial Court Opinion, 4/28/09, at 7.
¶ 17 CYF argues that the trial court misapplied the law and abused its discretion in that the decision fails to comport with the requirements of the Juvenile Act and with controlling case law. In particular, CYF argues that the trial court failed to acknowledge the decisions in In re Adoption of S.E.G., 587 Pa. 568, 571, 901 A.2d 1017, 1019 (2006); In re A.K., 936 A.2d 528, 533 (Pa.Super.2007); In re N.C., 909 A.2d 818, 824 (Pa.Super.2006); In re G.P.-R., 851 A.2d 967, 974 (Pa.Super.2004); and In re B.L.L., 787 A.2d 1007, 1016 (Pa.Super.2001). Further, CYF claims that the trial court did not follow the requirements *784 of 42 Pa.C.S.A. § 6351(e), (f), and (f.1), by expressly failing to make any of the determinations required by § 6351(f).
¶ 18 Additionally, CYF notes that the court-appointed special advocate for Child ("CASA") and guardian ad litem recommended the goal should be changed to adoption. Further, CYF argues that, although § 6351(e) does not require the trial court to follow its recommendations, the policy underlying the ASFA and the permanency provisions of § 6351 create an obligation on the trial court to explain why it does not share its assessment, and why it believes that the uncertain possibility of reunification is preferable to adoption, particularly where reunification efforts are permitted to continue. Moreover, CYF contends that the trial court failed to make a finding, required by § 6351(f)(5) and (f.1)(1), as to the likely date by which reunification might be achieved. CYF recognizes that the law does permit and, in fact, encourages the pursuit of concurrent planning so that efforts to reunify the family can continue while the child welfare agency attempts to find an adoptive resource. CYF asserts, however, that the law does not support the trial court's decision to maintain the status quo after more than twenty months of unsuccessful efforts to reunify the family.
¶ 19 Finally, CYF argues that § 6351(f)(9) does not condition the grant of a goal change on the existence of an identified and settled adoptive family. CYF contends that the trial court did not find any of the exceptions to § 6351(f)(9) existed in this matter. Accordingly, CYF contends that the trial court's refusal to grant a change of goal to adoption, based on the possible lack of an adoptive resource or the steps that the parents had begun to take to meet their FSP, was an abuse of discretion. CYF requests this Court to reverse the order of the trial court and remand the matter with instructions to change the goal to adoption.
¶ 20 Similarly, the guardian ad litem states that none of the parties were requesting family reunification, and that the parents were not ready for reunification. The guardian ad litem asserts that concurrent planning, which allows for both adoptive planning and continued efforts to help the family to reunify by reaching the goals in their FSP, was an alternative which the trial court could have pursued, but did not. The guardian ad litem seeks for this Court to reverse the order of the trial court and direct the goal be changed to adoption.
¶ 21 Mother responds that the trial court's findings are supported by competent evidence of record. Mother urges that the trial court did not abuse its discretion by determining that a permanency plan of reunification was in Child's best interests, where Foster Parents have not remained steadfast in their commitment to Child, and Mother is working diligently to meet her FSP goals.
¶ 22 Father argues that the facts of this case would not support termination under 23 Pa.C.S.A. § 2511(a)(8) and, therefore, would not support a goal change to adoption. He contends that CYF failed to show that the conditions which led to Child's removal, i.e., domestic violence, continue to exist. Father also argues that the evidence failed to support CYF's assertion that a goal change to adoption and a subsequent termination of the parents' rights would best serve Child's needs and welfare. Father stresses the fact that Dr. Rosenblum questioned the commitment of Foster Parents to Child. Father also claims that he and Mother have been the only constant relationship in Child's life, and that the trial court properly maintained the goal as reunification with them.
*785 ¶ 23 Our Supreme Court, in In re Adoption of S.E.G., explained the planning concepts as follows:
[Concurrent planning is a dual-track system under which child welfare agencies provide services to parents to enable their reunification with their children, while also planning for alternative permanent placement should reunification fail....
[T]he United States Congress enacted the Adoption and Safe Families Act of 1997, Pub.L. 105-89 (ASFA). ASFA altered the focus of dependency proceedings to include consideration of the need to move children toward adoption in a timely manner when reunification proved unworkable. See 42 U.S.C. § 671(a)(15)(C). In doing so, ASFA tied federal funding to a State's adoption of a plan that encompassed the required elements set forth in the ASFA. See id. § 671(a). One of the requirements relevant to the current appeal involved the availability of concurrent planning: "In order for a State to be eligible for payments... it shall have a plan approved by the Secretary which ... provides that reasonable efforts to place a child for adoption or with a legal guardian may be made concurrently with reasonable efforts of the type described in subparagraph (B)" [to preserve and reunify families.] See Id. § 671(a)(15)(F) (emphasis added).
In the years following the federal enactment of the ASFA, Pennsylvania modified its statutes relating to dependent children to comport with the federal provisions. Significantly, Pennsylvania's legislature amended the Juvenile Act in 1998 to include the dual purposes of reunification and adoption rather than merely reunification: "This chapter shall be interpreted and construed to effectuate the following purposes: (1) To preserve the unity of the family whenever possible or to provide another alternative permanent family when the unity of the family cannot be maintained...." 42 Pa.C.S. § 6301(b)(1) (emphasis added to indicate the amended language).
In re S.E.G., 587 Pa. at 572, 901 A.2d at 1019.
¶ 24 In In re S.E.G., our Supreme Court considered the question of whether the agencies and trial courts have the ability to pursue the dual purposes of reunification and alternate permanency planning through concurrent planning, as required by the ASFA, by allowing the agency to pursue termination without first securing a court-ordered goal change. The Supreme Court held that, pursuant to 42 Pa.C.S.A. § 6351, a court-ordered goal change from reunification to adoption was not a condition precedent to the filing of a petition to terminate parental rights. In re S.E.G., 587 Pa. at 587, 901 A.2d at 1029.
¶ 25 In In re S.B., 208 Pa.Super. 21, 943 A.2d 973 (2008), this Court discussed the decisions of In re A.K. and In re N.C. In In re S.B., the mother and father of the child at issue filed an appeal from the order which changed their family goal from "return home" to adoption. In In re S.B., the child had been sexually molested, but the perpetrator was not identified. This Court stated:
The trial court must focus on the child and determine the goal with reference to the child's best interests, not those of the parents. Id. "Safety, permanency, and well-being of the child must take precedence over all other considerations." In re N.C., [909 A.2d 818, 823 (Pa.Super.2006).] Further, at the review hearing for a dependent child who has been removed from the parental home, the court must consider the statutorily mandated factors. Id. "These *786 statutory mandates clearly place the trial court's focus on the best interests of the child." In re A.K., supra at 599.
When parents have cooperated with the agency, achieved the goals of their permanency plans, and alleviated the circumstances that necessitated the child's original placement, the agency should continue to put forth efforts to reunite the child with her parents. In re A.K., supra. However, "when the child welfare agency has made reasonable efforts to return a foster child to... her biological parent, but those efforts have failed, then the agency must redirect its efforts towards placing the child in an adoptive home." In re N.C., supra at 823.
Although a goal change to adoption is a step towards termination of parental rights, it does not in fact terminate parental rights. Id. When the court allows [the agency] to change the goal to adoption, it has decided "[the agency] has provided adequate services to the parent but that he/she is nonetheless incapable of caring for the child and that, therefore, adoption is now the favored disposition." In re A.L.D., 797 A.2d 326, 339 (Pa.Super.2002). Once the goal is changed to adoption, [the agency] is not required to provide further services. Id.

In re S.B., 943 A.2d at 978.
¶ 26 In its analysis in In re S.B., this Court discussed In re A.K., in which the trial court had ordered the goal change to adoption because the parents refused to accept responsibility for the abuse of their children. On appeal in In re A.K., this Court held that there was no continued threat to the children, and that the agency should continue efforts to reunite the children with their mother. The Court found it to be important that the father was imprisoned, and that the mother had been successful in meeting the requirements of her permanency plan, her interaction with the children was appropriate, and a bond with her children was evident.
¶ 27 This Court in In re S.B. also discussed the decision in In re N.C., in which the trial court focused on the best interests of the children and granted a goal change to adoption, despite the fact that the mother had made substantial progress toward completing her permanency plan. This Court affirmed the decision, holding that the mother's parenting skills and judgment regarding her children's emotional well-being remained problematic. This Court also reasoned that the trial court's fact-finding process was very thorough and deliberate, as the trial court conducted several hearings with numerous witnesses, and it also considered the input of the guardian ad litem as well as the thirteen-year-old child. This Court found the goal change to adoption was in the child's best interests, and affirmed the change.
¶ 28 Against this background, this Court in In re S.B. reasoned:
The court conducted numerous hearings over the course of three years, and [the agency] continuously offered services to [the mother and father] until the goal changed to adoption. S.B.'s emotional state has not improved to a level that would allow her to be placed with either parent. S.B.'s safety and emotional stability controls the current analysis, even in light of the parents' substantial compliance. S.B. has been in foster care for over four years; the court's decision to change the goal to adoption will permit her to have the long overdue sense of permanency she deserves.
In re S.B., 943 A.2d at 981.
¶ 29 Recently, in In the Interest of D.P., the mother of three dependent children appealed from an order that changed the goal for the family from reunification to *787 adoption and also ordered a concurrent permanency goal of "placement in another planned living arrangement intended to be permanent." In the Interest of D.P., 972 A.2d at 1222. This Court concluded that the trial court's factual findings and credibility determinations were supported by the record. Moreover, this Court ruled that the trial court applied the appropriate legal principles in its analysis of the best interest of the children. This Court agreed that the best interest analysis required a conclusion that the children should not be reunified with their mother, despite their expressed preferences to be reunified with her. Thus, this Court found no abuse of the trial court's discretion in changing the goal to adoption. In the Interest of D.P., 972 A.2d at 1232.
¶ 30 After a careful review of the record in the instant appeal, we conclude that the trial court failed to follow the legal principles set forth in § 6351(f) and (f.1) of the Juvenile Act, 42 Pa.C.S.A. § 6351(f) and (f.1), and in particular subsection (f)(9). Child had been in placement since February of 2007, for approximately 24 months at the time of the permanency hearing on January 23, 2009. CYF presented testimony that the parents had not satisfied their FSP goals, and that the domestic violence concerns, which caused Child's placement, continued to exist.
¶ 31 Moreover, the trial court failed to set forth the basis for its conclusion that the continuation of reunification as a permanency goal was best suited to the safety, protection and physical, mental and moral welfare of Child. While the trial court expressed concern that the particular foster home was questionable as an adoptive resource, such a consideration is not included in the statutory considerations under the Juvenile Act. CYF's caseworker, Sarah Klancer, testified that the parents had not complied with their FSP goals to the extent that there had not been any changes made. She testified that, in fact, Mother continued to have a Protection From Abuse Act order against Father initiated on August 11, 2008, and valid and enforceable through August 19, 2011. N.T., 1/23/09, at 55. Although the trial court found that Mother might have exaggerated some of her allegations against Father concerning his acts of violence, the court found that Father had a long criminal history of intimidating individuals. Id. at 178.
¶ 32 On the record at the hearing, the trial court stated its reasoning for permitting parents more time to work toward reunification, as follows:
I want to say to the parents that this is it. You get one more shot. You don't do what is prescribed as far as youras far as the family service plan, various other goals that are laid out, and I want Ms. Hart [counsel for CYF] to give an alternative as to what CYF would want to see done, and I urge you, Ms. Hart, to keep a stringent plan. I mean, I you're getting a break here today. I mean, it's a very close call.
* * *
And if there's any more conflict that I'm aware of between you, then I am going to, without a long hearing, I'm going to go for a goal change, because I have a lot of history on this case. But like I said, it's a very close call, ... and especially when I'm a little concerned about maybe the plight of the foster parents on this. I think they're sort of on the fence, and like I said, I wouldn't want to invest a lot more into it and you two act like angels and then that's not fair to them, because you still have an opportunity to clean your act up in this regard.
Id. at 178-180.
¶ 33 There was no assertion by any of the parties that any of the statutory exceptions *788 to subsection (f)(9) were applicable to this dependency case. After Child had been removed and placed in care for 15 of the preceding 22 months and the parents were not ready for reunification, the trial court committed an abuse of its discretion in refusing to change the goal from reunification to adoption pursuant to 42 Pa.C.S.A. § 6351(f)(9). In In re G.P.-R., this Court stated that, when reasonable efforts at reunification have failed, then the child welfare agency must work towards terminating parental rights and placing the child with adoptive parents. Id., 851 A.2d at 976 (citing In re B.L.L., 787 A.2d at 1016). This Court has repeatedly reminded trial courts of the oft-quoted admonishment, "[a] child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." See In re: Adoption of M.E.P., 825 A.2d 1266, 1276 (Pa.Super.2003).
¶ 34 Accordingly, we conclude that the trial court abused its discretion in refusing to change the permanency goal for Child to adoption. We, therefore, reverse the order of the trial court, and remand the matter to the trial court for the entry of an order changing the goal to adoption in conformance with this Memorandum.
¶ 35 Petition to withdraw granted.[5] Order reversed and remanded, with instructions. Jurisdiction relinquished.
¶ 36 FORD ELLIOTT, P.J., files a Dissenting Statement.
DISSENTING STATEMENT BY FORD ELLIOTT, P.J.:
¶ 1 I respectfully dissent. I believe the action taken by the trial court is clearly within its discretion pursuant to 42 Pa. C.S.A. § 6351(f.1) and (g). The court determined that the parents are continuing to make progress, there clearly exists a bond between parents and child, and there is no pending adoptive resource to otherwise bring about permanency for the child. I would affirm the trial court's decision to allow the parents "one more chance" with continuing services provided by CYF.
NOTES
[1] See N.T., 1/23/09, at 165.
[2] Counsel for Mother argues that CYF's appeal is untimely, because the trial court denied CYF's motion for reconsideration of the January 23, 2009 order on February 13, 2009, and CYF did not file a second notice of appeal with regard to the February 13, 2009 order. The February 13, 2009 order is not entered on the trial court's docket, nor is it in the certified record. We, nevertheless, reject Mother's argument. As this Court has previously explained, the procedure contemplated in Pa. R.A.P. 1701 is for the party to file a notice of appeal and simultaneously file a petition for reconsideration, in the event that either the trial court fails to grant the petition within thirty days or denies the petition. Valley Forge Center v. Rib-It/K.P., 693 A.2d 242, 245 (Pa.Super. 1997) (citing Pa.R.A.P. 1701 Note). The panel in Valley Forge stated that Rule 1701 is clear "the 30-day appeal period is tolled only by a timely order `expressly granting' reconsideration...." Id. Here, the trial court denied the petition for reconsideration. As such, CYF's notice of appeal from the January 23, 2009 order, filed within the thirty-day appeal period on February 18, 2009, was proper. See Pa.R.A.P. 1701 Note.
[3] We observe that this document is included in the certified record, bearing a date stamp by the trial court's Department of Court Records, Civil/Family Division, which reflects that office's receipt of the document for filing on March 4, 2009; however, the document is not entered on the trial court's docket.
[4] The Adoption and Safe Families Act, 42 U.S.C. §§ 671-675, imposes upon states the requirement to focus on the child's needs for permanency rather than the parent's actions and inactions. The amendments to the Juvenile Act, 42 Pa.C.S.A. §§ 6301-6365 provide that a court shall determine certain matters at the permanency hearing, including whether the child has been placed into foster care for 15 out of the last 22 months. See 42 Pa. C.S.A. § 6351(f)(9). With regard to permanency planning, the Pennsylvania Legislature contemplated that, after reasonable efforts have been made to reestablish the biological relationship, the process of the Agency working with foster care institutions to terminate parental rights should be completed within eighteen months. See In re N.W., 859 A.2d 501, 508 (Pa.Super.2004) (citation omitted).
[5] Counsel for Mother filed a Petition to Withdraw as Counsel because she is no longer employed by the Allegheny County Bar Foundation Juvenile Court Project ("JCP") through which the appeal is sought. JCP attorney Benjamin Zuckerman entered his appearance as counsel's substitute. We, therefore, grant the petition to withdraw.