J. S57006/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| MARCUS JONES, | : | No. 766 WDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, November 24, 2014,
in the Court of Common Pleas of Allegheny County
Criminal Division at Nos. CP-02-CR-0005593-2013,
CP-02-CR-0017261-2013

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND STRASSBURGER,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED OCTOBER 26, 2016**

Marcus Jones appeals the judgment of sentence in which the trial court sentenced him to serve an aggregate sentence of two and one-half to five years' imprisonment for possession with intent to deliver a controlled substance ("PWID")[1] followed by five years' probation.[2]

With respect to PWID and the criminal use of a communication facility, the trial court recounted the following facts:

> [O]n April 26, 2012, the Moon Township Police
> Department received a call that there was a

---

* Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

[2] The probation included five years' concurrent probation for criminal use of a communication facility, 18 Pa.C.S.A. § 7512(a), and two years' concurrent probation for simple assault, 18 Pa.C.S.A. § 2701(a)(3).

twenty-five year old deceased male in Room 136 at the Motel 6 located in Moon Township. Officer Ian Lucas of the Moon Township Police Department was dispatched to the Motel 6 and when he arrived there, he met with the deceased male's father, Stewart Brinkley. Brinkley identified the deceased as his son and Officer Lucas observed numerous needles and open stamp bags of heroin lying on the bed and dresser in that room. The stamp bags of heroin were labeled "new arrival" with a gold eagle emblem on them.

On April 27, 2012, text messages were located on the cell phone that the victim, Jeremy Brinkley, had been using. Jeremy Brinkley's father, who authorized the police to search that particular phone, owned this cell phone. Detective Charles Carr of the Moon Township Police Department made an investigation of that phone and determined that there were a number of text message exchanges between the Brinkley cell phone and the cell phone number of 412-[--------]. The nature of these text messages led him to believe that they were between a user who was attempting to purchase heroin and a supplier. Detective Carr was authorized by the Office of the Attorney General to communicate through both oral and text messages with the source's phone number and this was done on that date. Detective Carr contacted the source number and asked him if he was available, told the source that he was looking to get drugs and wanted to know if he had any. The response that came back was yes, that he had drugs and they were the same ones. Detective Carr then said he had one hundred eighty to two hundred dollars and they agreed to meet at the Motel 6 in Moon Township. Detective Carr went to the Motel 6 and then texted the source and asked where he was and the source responded that he was in a red pickup truck that was parked in the front parking lot of that Motel. The police approached that vehicle and removed two young males from the vehicle. The driver was identified as Anderson Marshall and the passenger was identified as [appellant]. Detective Carr then

texted the source's cell phone number and the phone rang and displayed the name of Jeremy and that phone was [appellant's] phone. [Appellant] was then arrested and as a result of a pat down search, was found to be in possession of seven hundred eight dollars, twenty stamp bags of heroin marked "new arrival" with a gold eagle emblem, and the cell phone that had been exchanging messages with Carr and Brinkley.

Trial court opinion, 2/11/16 at 4-5.

With respect to the charge for simple assault, Julie Capone, Esq., the Commonwealth's attorney, summarized the evidence it would have presented had the case gone to trial:

Had the Commonwealth proceeded on Case Number 201317261, we would have called Officer Micah Anthony from the Pittsburgh Police Department as well as Horace Durham and Frances Durham, who would have testified . . . that on December 3rd of 2013, Frances Durham, who was 77 years old at the time, stated that she and her 24-year-old grandson, [appellant], had gotten into an argument. He had believed that she had taken his marijuana stash.

[Appellant] told Mrs. Durham that he would hurt her, his father Horace Durham, and his uncle, who was not on scene. He had ripped all the phone cords out of the wall and picked up a television as if to throw it.

Mrs. Durham stated she was in fear at that time of injury.

Mr. Horace Durham, who was just operated on for lung cancer, arrived on scene with his one-year-old grandson, Marcus Jones, Jr., who is [appellant's] son, to make sure his mother was safe.

She, Frances, would have testified that she had called her son earlier to tell him about the threats that were being made. Concerned for her safety, they called the police.

While officers were searching the area because [appellant] had left, another call came in while the officers were looking for [appellant], that [appellant] had returned back to the scene and at this time got into a physical altercation with his father Horace Durham, knocking him to the ground as well as the baby that Horace Durham was holding.

At this point, Horace Durham reached for his gun and told [appellant] he was going to get his gun. They then started to fight over the gun. Mr. Durham started to lose consciousness because he was assaulted by [appellant] and proceeded to shoot [appellant] in the thigh.

[Appellant] left at that time and took his grandmother's car and drove himself to Allegheny General Hospital.

It would be noted . . . that no one asked for treatment and refused treatment at the scene, including the infant baby.

Notes of testimony, 8/28/14 at 6-8.

On August 28, 2014, appellant pled guilty to criminal use of a communication facility, PWID, and simple assault. The Commonwealth dropped the remaining charges.

In the written plea colloquy, appellant answered "Yes" to the following questions:

5. Do you understand that if you have been charged with more than one offense, the Court may impose a separate, or consecutive, sentence for each offense? []

6.  Have you discussed with your attorney the elements of each charged offense? []

7.  Have you discussed with your attorney the factual basis of each charged offense? []

8.  Have you discussed with your attorney how the facts in your case prove the elements of each charged offense? []

. . . .

44. Have you and your attorney discussed the maximum possible sentences which this Court could impose? []

. . . .

61. Are you satisfied with the legal advice and legal representation of your attorney? []

62. Have you had ample opportunity to consult with your attorney before entering your plea, and are you satisfied that your attorney knows all of the facts of your case and has had enough time within which to check any questions of fact or law which either you or your attorney may have about this case? []

63. Has your attorney gone over with you the meaning of the terms of this document?

Guilty Plea, explanation of defendant's rights, 8/28/14 at 2, 8, and 10, ¶¶ 5-8, 44, and 61-63.

At the guilty plea hearing on August 28, 2014, the trial court asked appellant if he understood the maximum sentences that could be imposed for each crime for which appellant pleaded guilty. Appellant answered that he did. Appellant responded in the affirmative when the trial court asked

him whether he was satisfied with his representation and that his counsel had explained to him the crimes for which he pled guilty and the elements of those crimes. (Notes of testimony, 8/28/14 at 4.)

At the sentencing hearing, Stuart Brinkley, the father of Jeremy Brinkley, testified that appellant was not a friend of his son, but was an aggressive drug dealer who would continually call and text Jeremy Brinkley in an effort to sell him heroin. (Notes of testimony, 11/24/14 at 7-8.) The trial court stated that, as a result of appellant's drug activity, "somebody died," and called him a "killer." (***Id.*** at 11-12.)

On December 4, 2014, appellant filed a post-sentence motion. On the same date, Brandon Herring, Esq. (Attorney Herring), moved to withdraw as counsel. On February 13, 2015, the trial court granted the motion to withdraw and appointed new counsel. On March 17, 2015, appellant filed an amended post-sentence motion. The trial court denied the motions on April 14, 2015.

Appellant raises the following issues for this court's review:

1. Whether the trial court erred and abused its discretion in not granting Appellant's motion to withdraw his guilty plea because it was not knowingly and voluntarily made in that his counsel was ineffective and did not advise him (a) that the factual basis for the plea would include representations that he was the source of the drugs responsible for an overdose death; (b) that he had a right to file a motion to suppress the evidence challenging the probable cause for the felony stop/arrest; and

> > (c) of the maximum possible penalty and sentence which the court could impose?
>
> > 2. Whether the trial court erred and abused its discretion because the sentence was manifestly excessive, not appropriate under the Sentencing Code and contrary to the fundamental norms underlying the sentencing process in that it was beyond the aggravated guideline range based on a finding of fact that Appellant was the source of the drugs for and was responsible for an overdose death which was not supported by competent evidence and which was against the weight of the evidence?

Appellant's brief at 4.

Appellant asserts that he would not have entered a plea had he known that the factual explanation of the summary of the evidence would include references to his presumed responsibility for the death of Jeremy Brinkley. Appellant adds that his counsel did not advise him that the summary of the evidence would include this information so that trial counsel was ineffective.

With respect to whether appellant made a knowing and voluntary plea, this court has held that "[i]n order to permit the withdrawal of a guilty plea after sentence has been entered, there must be a showing of prejudice that results in a manifest injustice to the defendant." **Commonwealth v. Vance**, 546 A.2d 632, 635 (Pa.Super. 1988), **appeal denied**, 557 A.2d 723 (Pa. 1989), **cert. denied sub nom. Vance v. Horn**, 516 U.S. 1060 (1996) (citations omitted).

"When reviewing a trial court's denial of a motion to withdraw a plea of guilty, we will not disturb the court's decision absent an abuse of discretion." *Commonwealth v. Miller*, 748 A.2d 733, 735 (Pa.Super. 2000).

The trial court correctly stated that the information concerning Jeremy Brinkley and appellant's connection to him was contained in the affidavit attached to the original criminal complaint. Appellant should have been aware that the factual summary would contain references to Jeremy Brinkley's death. Further, to the extent appellant claims that his trial counsel was ineffective, a petitioner must wait to raise claims of ineffective assistance of counsel until collateral review. *Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002).

Appellant next contends that he would not have entered his plea had he been aware of and effectively advised by counsel of his right to file a motion to suppress the evidence concerning the stop and arrest in the parking lot of the Motel 6. Once again, appellant challenges the effectiveness of counsel which is properly brought in a collateral attack. *Grant*.

Appellant next contends that he would not have entered pleas to either of the two cases had he known and been effectively advised of the maximum possible sentence as opposed to his belief that there was a plea agreement for both cases within the standard range of 6 to 14 months followed by a period of probation. Appellant argues that he did not understand the trial

court's explanation of the maximum penalty because he believed that it did not apply to him.

In the written colloquy, appellant answered "yes" to the questions of whether he understood that if the plea were accepted, the judge would still have to sentence him on the charges for which he pled guilty and whether he and his attorney had discussed the maximum possible sentence which the trial court could impose. Then, at the plea hearing, the trial court asked appellant whether he understood the maximum sentences for the charges for which he was pleading guilty and the maximum total possible sentence. Appellant replied that he did. (Notes of testimony, 8/28/14 at 2-4.) An appellant is constrained by the statements made during the plea colloquy and cannot readily thwart the effect of those statements and attempt to render the voluntary plea invalid without demonstrating manifest injustice. *See Commonwealth v. Stork*, 737 A.2d 789 (Pa.Super. 1999). Appellant's claim that he thought that there was a plea agreement for both cases and that his counsel failed to adequately explain the maximum sentence to him does not constitute manifest injustice. A review of the written and oral plea colloquies indicates that the trial court did not abuse its discretion when it denied the motion to withdraw the plea on the basis that it was not knowingly and voluntarily given. Once again, to the extent that appellant is raising the issue of the ineffectiveness of his counsel, that issue is raised in collateral review.

Appellant next contends that the trial court erred and abused its discretion because the sentence was manifestly excessive, inappropriate under the Sentencing Code, and contrary to the fundamental norms underlying the sentencing process because it exceeded the aggravated guideline range of 20 months and was based on an erroneous determination that appellant was responsible for Jeremy Brinkley's death.

> [T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. . . . [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.
>
> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

**Commonwealth v. Moury**, 992 A.2d 162, 169-170 (Pa.Super. 2010) (citation omitted).

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. **Commonwealth v. Sierra**, [752 A.2d 910, 912 (Pa.Super. 2000)]. An appellant challenging the

discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Moury*, 992 A.2d at 170 (citation omitted).

Here, we begin our analysis by determining whether appellant has complied with the procedural requirements of challenging his sentence. First, appellant timely filed his notice of appeal pursuant to Pa.R.A.P. 902 and 903. Second, appellant raises the issue that the trial court erred and abused its discretion when it sentenced appellant beyond the aggravated guideline range on the basis that appellant was responsible for the death of Jeremy Brinkley. A review of appellant's post-trial motions reveals that he raised this issue.

Third, appellant included a Rule 2119(f) statement in his brief in which he avers:

> [T]he trial court sentenced Appellant beyond the aggravated guideline range of 20 months based on findings of facts which are contrary to the weight of the competent evidence of record and which would

> have required additional charges and a conviction or plea thereto before same could properly apply as a basis for Appellant's sentencing under the Sentencing Code, 42 Pa.C.S.[A.] § 9732 and § 9752. This constitutes a colorable argument that the sentencing judge's actions were also contrary to the fundamental norms underlying the sentencing process – whereby sentencing is based on the crimes pled to and prior convictions, but not crimes which were never charged or proven."

Appellant's brief at 8.

A claim that a trial court relied on an improper factor when levying a sentence constitutes a substantial question. *See Commonwealth v. Downing*, 990 A.2d 778, 782 (Pa.Super. 2010). We, therefore, will address his appeal on the merits.

At the sentencing hearing, the trial court explained its sentencing decision:

> [Appellant], I've read the presentence report, and that's probably to your detriment. I note that there is currently a pending charge filed against you where 1,055 stamp bags of heroin were found together with a .380 pistol, also details your prior history through juvenile court and as an adult, the fact that your [sic] running around with a firearm got you shot, you threaten people, and, as a result of your drug activity, somebody died.
>
> You just told me you have no remorse for that, and that's a shame because you are a drug dealer and a killer.

Notes of testimony, 11/24/12 at 11-12.

In its opinion, the trial court further explained its decision:

Pursuant to the provisions of the Sentencing Code, if any individual sentence is entitled to have an individualized sentence, the Court is required to consider the impact of the crime on the victim, the safety of the public and the defendant's rehabilitative needs. This Court ordered a presentence report and that report revealed [appellant's] continued involvement in the criminal justice system, beginning with adjudications in Juvenile Court and his convictions as an adult. Almost all of his cases involve drugs and the rest of his cases also have the gun as part of their factual pattern. As detailed previously, the facts of [appellant's] case clearly indicated that he was a drug dealer and that he had sold the fatal drugs to one of his users and that he was in possession of the same batch of drugs labeled "new arrival" with gold eagle emblem, and in fact, texted the police that he had the same batch of drugs as previously sold to the deceased victim. This Court considered the impact upon the victim and the impact upon the community in addition to what would be [appellant's] rehabilitative needs. [Appellant] had numerous opportunities in the Juvenile Court system and adult system to cease his criminal activity but those periods of probation did not deter [appellant] from continuing his drug dealing. The impact upon the victim is obvious since Brinkley died as a result of the heroin that was sold to him. The impact upon the community is also readily apparent since [appellant] was in possession of a potentially fatal quantity of heroin. The sentence imposed upon [appellant] took into consideration all of the factors of the Sentencing Code and was an appropriate sentence.

Trial court opinion, 2/11/16 at 8-9.

Where the sentencing court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." **Commonwealth v. Devers**, 519 Pa. 88, 101-02, 546 A.2d 12, 18 (1988). **See also**

- 13 -

> ***Commonwealth v. Tirado***, 870 A.2d 362, 368 (Pa.Super. 2005) (stating if sentencing court has benefit of PSI, law expects court was aware of relevant information regarding defendant's character and weighed those considerations along with any mitigating factors).

***Moury***, 992 A.2d at 171.

Here, the trial court acknowledged that it had read the pre-sentence investigation report, so it is presumed that it considered all relevant factors. Further, at the plea hearing, Rachel Newman ("Attorney Newman"), attorney for the Commonwealth, described the evidence that would be presented by the Commonwealth regarding the connection between Jeremy Brinkley and appellant.

After Attorney Newman's statement, the trial court asked Attorney Herring, if he had any additions or corrections. Attorney Herring answered, "No, Your Honor." (Notes of testimony, 8/28/14 at 11.) The information that Jeremy Brinkley died as the result of heroin purchased from appellant was presented to the trial court. The trial court did not abuse its discretion when it considered the circumstances of Jeremy Brinkley's death when it fashioned the sentence for appellant.

Judgment of sentence affirmed.

J. S57006/16

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/26/2016