J-A10028-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2996 EDA 2023 |

Appeal from the Order Entered November 27, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000718-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: D.L.S., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2997 EDA 2023 |

Appeal from the Decree Entered November 27, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000336-2023

BEFORE:   PANELLA, P.J.E., BECK, J., and COLINS, J.*

MEMORANDUM BY BECK, J.:                    **FILED MAY 17, 2024**

D.S. ("Father") appeals from the order changing the dependency permanency goal of D.L.S., Jr. ("Child") from reunification to adoption, and decree terminating Father's parental rights to Child entered by the

---

* Retired Senior Judge assigned to the Superior Court.

Philadelphia County Court of Common Pleas (the "trial court").[1]  Finding that

each decision is supported by clear and convincing evidence, we affirm.

The record reflects that the trial court held a combined hearing to

determine Child's permanency goal pursuant to 42 Pa.C.S. § 6351(f), and to

rule upon the petitions filed by the Philadelphia County Department of Human

Services ("DHS") to involuntarily terminate the parental rights of Mother and

Father to Child pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b).

Mother attended the hearing, but Father did not, despite receiving notice.  He

was, however, represented by counsel.

The trial court summarized the testimony provided related to Father,

which our review of the record confirms, as follows:

> Jasmine Brown testified that she is a visitation coach for CUA
> and that she has supervised many visits between the parents and
> the child.  She testified that Father attended visits but did not
> [always] bring food or toys for the child.  She also noted that
> Father appeared to be more playful, like a friend, than a parent
> when interacting with the Child. …
>
> \*    \*    \*
>
> … She also testified that she has repeatedly told Father that
> he needed to bring diapers to the visits but that Father has never
> done so.  The resource parent has been the source for all diapers
> that were used during the visits.  She noted that Father attended
> four out of the seven visits she was scheduled to supervise.  Father
> canceled one of his scheduled visits because he had to do laundry.
> Ms. Brown testified that occasionally the Child will hit or spit on

---

[1]  The trial court also issued the goal change order and a decree terminating the parental rights of J.R. ("Mother") the same day.  Mother's appeal is separately pending before this Court.

Father during their visits and that Father laughs it off without redirecting the Child.

\* \* \*

Whitney Crawford testified that she is a case manager for CUA and that she was assigned this case. She testified that Child has always lived with the resource parent and at no time has the Child resided with Mother or Father. She stated that the Child currently receives speech therapy, occupational therapy, behavioral therapy, and physical therapy. She noted that she has seen the Child in the presence of the resource parent and that sometimes the Child calls the resource parent "mom" and other times by her first name.

Ms. Crawford described Father as disinterested with achieving his SCP objectives. Despite being ordered to do so, Father failed to do a BHS consultation for almost three years, never got his GED, never attended domestic violence classes, never enrolled in the Achieving Reunification Center, never reengaged with therapy, and never provided proof of employment. Father has never secured suitable housing as he lives off-lease with a paramour in public housing. Father also submitted an unsuitable urine sample to the CEU for drug testing as the sample was not in the appropriate temperature range. Ms. Crawford stated that Father occasionally tells her that he wants his son but then fails to follow up on or follow through with his SCP objectives. Ms. Crawford does not believe the child would be irreparably harmed if Father's parental rights were terminated.

\* \* \*

Ms. Crawford testified that the resource parent provides care, comfort, and support for the Child. She also ensures that the Child sees the doctor when he is sick and gets whatever he needs. She makes certain that the Child is clothed, fed, and attends daycare. The resource parent monitors the Child to ensure that he is developmentally on target. Ms. Crawford testified that she believes it is in the Child's best interest for the parental rights of Mother and Father to be terminated and for the Child to be free for adoption.

Trial Court Opinion, 1/26/2024, at 18-23 (record citations omitted).

At the conclusion of the hearing, the trial court entered an order changing Child's permanency goal from reunification to adoption and decrees terminating the parental rights of Mother and Father. Father filed timely notices of appeal from the order and decree; Father and the trial court both complied with Pa.R.A.P. 1925.

Father raises two issues for our review:

1. Whether the trial court abused its discretion and erred as a matter of law in terminating [F]ather's parental rights when DHS failed to meet its burden that termination of parental rights was warranted under 23 Pa.C.S. § 2511(a) and (b).

2. Whether the trial court abused its discretion and erred as a matter of law in changing the permanency goal to adoption from reunification as there was not competent evidence that it was in the best interests of the child.

Father's Brief at 8.

In his first claim, Father contends that the trial court abused its discretion by terminating his parental rights. When reviewing a challenge to a decree terminating parental rights, we are mindful of the following:

Termination of parental rights is among the most powerful legal remedies that the judicial system possesses. The decision to sever permanently a parent's relationship with a child is often bound up in complex factual scenarios involving difficult family dynamics and multiple service providers. Our trial courts are tasked with carefully considering and weighing all of the evidence presented at termination hearings in determining whether the petitioning party has met its burden of proving by clear and convincing evidence that termination meets the exacting standards outlined in the Adoption Act.

Because trial courts are on the front lines assessing the credibility of witnesses and weighing competing and often challenging evidence, it is paramount that, in reviewing trial

courts' decisions in this arena, appellate courts defer to trial courts' first-hand observations as they relate to factual determinations. In this regard, we reiterate that appellate courts must review such decisions for an abuse of discretion or error of law, and appellate courts may reverse trial courts only when that discretion has been breached or when the law has been misapplied. In other words, an appellate court should review the certified record to decide whether it supports the trial court's order, regardless of whether the appellate court agrees with the result that the trial court reached.

*Interest of S.K.L.R.*, 256 A.3d 1108, 1129 (Pa. 2021). Our Supreme Court has often "emphasized our deference to trial courts," but has also acknowledged that "we must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence." *In re Adoption of C.M.*, 255 A.3d 343, 359 (Pa. 2021) (citations omitted).

Termination of parental rights is governed by 23 Pa.C.S. § 2511, which requires a bifurcated analysis. *Id.* at 359. "Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a)." *In re C.M.K.*, 203 A.3d 258, 261-62 (Pa. Super. 2019). If the trial court determines the petitioner established grounds for termination under section 2511(a) by clear and convincing evidence, the court then must assess the petition under subsection 2511(b), which focuses on the child's needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come

to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In re C.S.***, 761 A.2d 1197, 1201 (Pa. Super. 2000) (en banc) (quotation marks and citations omitted).

As stated hereinabove, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8).[2]  In his brief before this

---

[2] The pertinent portion of the statute provides for termination of parental rights on the following grounds:

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

> \*    \*    \*

> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

> \*    \*    \*

> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12

*(Footnote Continued Next Page)*

Court, however, Father concedes that his rights were properly terminated under section 2511(a). *See* Father's Brief at 16 ("After a thorough review of the record, it is not refuted that the trial court's finding that DHS met its burden of proof concerning 2511(a) was supported with competent evidence") (unnecessary capitalization omitted). Instead, he focuses his argument on the sufficiency of the evidence presented to support a finding that termination met Child's needs and welfare pursuant to section 2511(b). He contends that there was clear evidence of a bond between Father and Child, visits between them went well, there were no safety concerns, Father provided Child with food and changed his diapers, and they engaged in age-appropriate play. *Id.* at 17-18. According to Father, DHS presented no evidence upon which the trial court could determine that Child would not be irreparably harmed by termination of Father's parental rights. *Id.* at 18. Father therefore asserts that the termination of his parental rights was not supported by competent evidence under subsection (b). *Id.*

The trial court found that although Father appeared to enjoy visiting with Child, he "refused to, or was incapable of, taking the necessary steps to

---

months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a)(1), (2), (5), (8).

parent him." Trial Court Opinion, 1/26/2024, at 18. It further found the existence of a parent/child bond between Child and his foster mother, giving great weight to the testimony presented by Ms. Brown and Ms. Crawford. *Id.* at 24.

Section 2511(b) provides:

The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

Under section 2511(b), we focus on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. *In re T.S.M.*, 71 A.3d at 267. "[T]he determination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child. The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond." *Id.* (quotation marks omitted). But it is not enough that there exists a bond between parent and child to avoid termination. Rather, the trial court must determine whether the bond is "necessary and beneficial" to the child, such that "maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." *In re K.T.*, 296 A.3d 1085, 1105-06 (Pa.

2023). Because the severing of any parent-child bond may be emotionally painful for a child, the orphans' court cannot preclude termination based solely on evidence of an "adverse" or "detrimental" impact to the child. *Id.* at 1110-11. Instead, focusing upon the "child's development, and mental and emotional health," the trial court should assess whether severing the bond "is the kind of loss that would predictably cause extreme emotional consequences or significant, irreparable harm" to the child. *Id.*

Thus, a court must examine the matter from the child's perspective, placing his "developmental, physical, and emotional needs and welfare above concerns for the parent." *Id.* at 1105-06. Our Supreme Court has cautioned that "the law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved." *T.S.M.*, 71 A.3d at 268-69. The party seeking termination bears the burden of proving, by clear and convincing evidence, that termination of parental rights serves a child's needs and welfare. *K.T.*, 296 A.3d at 1105-06.

When determining whether the petitioner met its burden to prove that termination serves a child's needs and welfare, the trial court must consider, at a minimum, the factors delineated by our Supreme Court in *K.T.*, all of which are of "'primary' importance in the [s]ection 2511(b) analysis" and "may contribute equally to the determination of a child's specific developmental, physical, and emotional needs and welfare." *Id.* at 1109. In addition to the

child's bond with his biological parent, the section 2511(b) analysis must also include the consideration of factors such as: "the child's need for permanency and length of time in foster care …; whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability." *Id.* at 1113 (citations omitted). Importantly, "trial courts have the discretion to place appropriate weight on each factor present in the record before making a decision regarding termination that best serves the child's specific needs." *Id.*

Analyzing the matter before us, we begin by observing that Father has arguably waived his claim that termination under section 2511(b) was not supported by the evidence based upon his concession that DHS satisfied its burden of proof under section 2511(a). Although section 2511(a) generally focuses on the behavior of the parent, both 2511(a)(5) and 2511(a)(8), relied upon in the case at bar to terminate Father's parental rights to Child, specifically require consideration of whether "termination of the parental rights would best serve the needs and welfare of the child." *See* 23 Pa.C.S. § 2511(a)(5), (8); *supra*, note 2; *In re C.L.G.*, 956 A.2d 999, 1008-09 (Pa. Super. 2008) (en banc). This consideration arising under section 2511(a)(5) and (8) "is not a mere formality flowing from the existence of the preceding … elements enumerated in the statute." *In re P.A.B.*, 570 A.2d 522, 525 (Pa. Super. 1990).

- 10 -

And although separately enumerated, this Court has interpreted the needs and welfare analyses required under subsections (a) and (b) to utilize the same legal standards and to be based upon the same evidence. ***See, e.g., C.L.G.***, 956 A.2d at 1008-09 (although recognizing that subsections (a)(8) and (b) "are distinct" and finding "we must address [s]ection 2511(a) before reaching [s]ection 2511(b)," holding that both subsections "direct us to evaluate the 'needs and welfare of the child,'" and concluding, in discussion of both subsections, that the child's needs and welfare were best served by terminating her mother's rights utilizing the same evidence); ***see also Matter of Adoption of M.A.B.***, 166 A.3d 434, 448 (Pa. Super. 2017) (combining discussion of the children's needs and welfare pursuant to subsection (a)(8) and subsection (b) because the "third element of [s]ection 2511(a)(8) requires that the [o]rphans' [c]ourt conduct an analysis similar to that required under [s]ection 2511(b)"); ***accord In re R.I.S.***, 36 A.3d 567, 579 n.3 (Pa. 2011) (plurality) (Baer, J., concurring) (noting the similarity between the last prong of section 2511(a)(8) and section 2511(b)).[3]  Therefore, by conceding that DHS satisfied its burden of proof under section 2511(a)—specifically, (a)(5) and (a)(8)—Father has conceded that the evidence was

---

[3] The propriety of using the same needs and welfare analysis to satisfy the two separate provisions of section 2511 is not before this Court in this matter. We are bound by our prior en banc decision.  Pa.R.A.P. 3103(b).

sufficient to find that termination best served Child's needs and welfare under section 2511(b).

Regardless of waiver, we find that the record supports the trial court's findings and its determination that DHS presented clear and convincing evidence that termination of Father's parental rights best served Child's needs and welfare. The record reflects that Child, who at the time of the termination was over three years old, has been in care since his birth, living in the same foster home. N.T., 11/27/2023, at 79-80. Child is bonded to his foster parent, who is also an adoptive resource for Child. *Id.* at 79, 82. The foster parent meets Child's needs, including ensuring that he receives services to address his development, behavior, motor skills, and speech, for all of which he has deficiencies. *Id.* at 80, 81. She also has enrolled him in daycare. *Id.* at 104.

Although Father regularly visits Child, he does not exert himself as a parent, but is more "like a friend" to Child. *Id.* at 16. He does not bring diapers (despite being reminded a number of times that he needs to); those are always provided by the foster parent. *Id.* at 23-24. Father briefly progressed to unsupervised visits, but because he took Child to a place he was not permitted to go, the visits returned to supervised; there is no indication that he has ever had overnight visits with Child. *Id.* at 93-95. He failed to participate in parenting classes as ordered or attend mental health therapy or domestic violence counseling. *Id.* at 86, 88, 89, 97. His housing cannot be assessed by DHS because it is "illegal," as he lives in his paramour's residence

that she obtained through the Philadelphia Housing Authority, and he is not on the lease and therefore is not permitted to live there. *Id.* at 97-98.

Father presented no evidence at the hearing. In fact, despite receiving notice and signing a subpoena to attend, Father failed to even appear. *See id.* at 126; DHS Exhibit 12. DHS provided evidence, in the form of testimony by Ms. Crawford, that terminating Father's parental rights to Child would not irreparably harm him, and nothing in the record refutes that evidence. *See* N.T., 11/27/2023, at 104. To the contrary, the record clearly reflects, based on the trial court's credibility determinations, that the length of time Child has been in care, his need for permanency, his foster mother's continued and unwavering dedication to addressing his physical, emotional, mental, educational and physical needs, and the nature of the bond between Father and Child, all support a finding that Child's needs and welfare are best met by terminating Father's parental rights and freeing Child for adoption. We therefore find no error in the trial court's decision.

Turning to Father's second issue, Father relies on his prior argument—the lack of evidence of how severing his bond with Child would impact Child—to support his claim that the trial court abused its discretion by changing the goal from reunification to adoption. Father's Brief at 20. As our discussion above found that argument to be without merit, this claim similarly fails.

Moreover, the law is clear that a goal change to adoption is not a necessary prerequisite to allow a trial court to involuntarily terminate a

parent's rights. ***In re Adoption of S.E.G.***, 901 A.2d 1017, 1029 (Pa. 2006). As we have concluded that the trial court did not abuse its discretion by terminating Father's parental rights to Child, the propriety of the goal change decision is therefore moot. ***Int. of D.R.-W.***, 227 A.3d 905, 917 (Pa. Super. 2020) (citing ***In re D.A.***, 801 A.2d 614, 616 (Pa. Super. 2002), for the proposition that "[a]n issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect").

Decree and order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/17/2024